78 A.3d 1044

COMMONWEALTH of Pennsylvania, Appellee

v.

Jeffrey Wayne BAKER, Appellant.

Supreme Court of Pennsylvania.

Argued Oct. 16, 2012.

Decided Oct. 30, 2013.

Timothy Lee Clawges, Esq., Cumberland County Public Defender's Office, Charles P. Mackin Jr., Esq., Charles P. Mackin, P.C., for Baker, Jeffrey Wayne, Appellant.

Karl Baker, Esq., Ellen T. Greenlee, Esq., Peter Rosalsky, Esq., Defender Association of Philadelphia, Appellant Amicus Curiae.

David James Freed, Esq., Matthew Peter Smith, Esq., Cumberland County District Attorney's Office, Commonwealth of Pennsylvania, Appellee.

Ronald Eisenberg, Esq., Edward F. McCann Jr., Esq., Philadelphia District Attorney's Office, Pennsylvania District Attorney's Association, Hugh J. Burns Jr., Esq., R. Seth Williams, Esq., Pennsylvania District Attorney's Association, Appellee Amicus Curiae.

Kathleen Granahan Kane, Esq., Richard A. Sheetz Jr., Esq., PA Office of Attorney General, Linda L. Kelly, Esq., Office of Attorney General, Attorney General's Office, Appellee Amicus Curiae.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice McCAFFERY.

At issue in this discretionary appeal is whether the 25–year mandatory minimum sentence of imprisonment imposed for Appellant's second conviction of possessing child pornography is grossly disproportionate to the crime and, therefore, unconstitutional. We determine that the punishment is not grossly disproportionate to the crime and, accordingly, we affirm.

Appellant was first convicted of possession of child pornography in 2001. That conviction resulted in a sentence of five years' intermediate punishment which Appellant completed in September 2006. In January 2007, the police received a cyber-tip from the National Center for Missing and Exploited Children that Appellant had sent and received images of child pornography by computer. A search warrant was issued for computers and related items located in Appellant's residence. The evidence seized from Appellant's bedroom as a result of the search included a computer and multiple DVDs containing dozens of video clips and hundreds of photographs of children engaging in sex acts. Subsequent forensic analysis showed that the computer had been used to share this illicit material online. Appellant was arrested and arraigned on child pornography charges, and the Commonwealth, although not required to do so at that point in the proceedings, informed Appellant that if convicted, he would be subject to a 25–year mandatory minimum sentence under the provisions of the Sentencing Code, 42 Pa.C.S. §§ 9701–9799.9, at Section 9718.2 (Sentences for sex offenders).[1]

At Appellant's jury trial, the Commonwealth introduced into evidence 29 separate video clips of children engaging in sex acts that had been recovered from the DVDs and computer

1. Section 9718.2 sets a mandatory minimum prison term of 25 years if the defendant is convicted of one of the sexual offenses under Section 9795.1 which require registration with the state police, and if the defendant had previously been convicted of an offense under Section 9795.1. A violation of Section 6312 of the Crimes Code relating to sexual abuse of children includes the possession of child pornography and is an enumerated offense under Section 9795.1 requiring registration with the state police.

seized from Appellant's residence. For each clip, the Commonwealth presented corresponding expert testimony that at least one of the persons seen engaging in sex was less than eighteen years of age. The videos were graphic, and a number of them showed very young children, some of whom appeared to be toddlers, being anally and/or vaginally raped by adult men. The jury convicted Appellant of 29 counts of "sexual abuse of children—child pornography," 18 Pa.C.S. § 6312(d)(1), and one count of criminal use of a communication facility, 18 Pa.C.S. § 7512.[2]

Following conviction but before sentencing, the Commonwealth gave Appellant and the court formal notice of its intention to proceed under the mandatory minimum sentencing provisions set forth at Section 9718.2. The court ordered a pre-sentence investigation and a hearing to determine whether Appellant was a sexually violent predator ("SVP") pursuant to Section 9795.4. At the SVP hearing, the Commonwealth presented evidence that Appellant had sent instant messages on the computer seized from his bedroom, attempting to solicit adult women in the Philippines to commit sex

---

**2.** The Crimes Code defines the sexual offense committed by Appellant as follows:

§ **6312.** **Sexual abuse of children.**

. . . .

**(d) Child pornography.—**

(1) Any person who intentionally views or knowingly possesses or controls any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act commits an offense.

(2) A first offense under this subsection is a felony of the third degree, and a second or subsequent offense under this subsection is a felony of the second degree.

18 Pa.C.S. § 6312(d)(1)(2).

Under Section 6312, a "prohibited sexual act" is defined as "sexual intercourse as defined in section 3101 (relating to definitions), masturbation, sadism, masochism, bestiality, fellatio, cunnilingus, lewd exhibition of the genitals or nudity if such nudity is depicted for the purpose of sexual stimulation or gratification of any person who might view such depiction." 18 Pa.C.S. § 6312(g). At the time Appellant was charged and convicted, Section 6312(d)(1) proscribed only knowing possession or control of the depictions or other material. The statute was amended, effective September 14, 2009, to add "intentionally views" to the proscribed activity.

acts upon children at his direction while he watched via live web-cam. A member of the Sexual Offender's Assessment Board testified that in his opinion, Appellant met the diagnostic criteria for pedophilia and the legal criteria to be deemed an SVP. Thereafter, the court determined that Appellant was an SVP, and sentenced him to 29 concurrent mandatory terms of 25 to 50 years' imprisonment for his convictions of sexual abuse of children—child pornography, and a concurrent sentence of 1 to 7 years' imprisonment for his conviction of criminal use of a communication facility. The court also ordered that Appellant be subject to lifetime registration with the state police under Section 9795.1(b)(3).

Appellant appealed to the Superior Court, claiming, *inter alia*, that his sentence under Section 9718.2 violated the prohibition against "cruel and unusual punishments" contained in the Eighth Amendment to the United States Constitution, and the prohibition against "cruel punishments" contained in Article 1, Section 13 of the Pennsylvania Constitution. The Superior Court affirmed the judgment of sentence, and determined, as a threshold matter with respect to Appellant's constitutional challenge, that Appellant had failed to show that the length of his sentence raised an inference of gross disproportionality when compared to the gravity of his crime. *Commonwealth v. Baker*, 24 A.3d 1006, 1029 (Pa.Super.2011). This Court granted allowance of appeal to address whether Section 9718.2 of the Sentencing Code, mandating a 25–year minimum sentence of imprisonment for offenders who have been twice convicted of possessing child pornography, is grossly disproportionate to the crime and, therefore, unconstitutional.[3]

"The Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences which are grossly disproportionate to the crime." *Commonwealth v. Hall*, 549 Pa. 269, 701 A.2d 190, 209 (1997) (*quoting Harmelin v. Michigan*, 501 U.S. 957, 1001, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991)). There is no

3. Because the constitutionality of a statute is a question of law, our standard of review is *de novo* and our scope is plenary. *Commonwealth v. Omar*, 602 Pa. 595, 981 A.2d 179, 185 (2009).

prior decision from this Court addressing challenges to non-capital mandatory recidivist sentencing statutes under the Eighth Amendment or Article I, Section 13.

▮▮▮ In *Commonwealth v. Spells*, 417 Pa.Super. 233, 612 A.2d 458, 462 (1992) (en banc), the Superior Court applied the three-prong test for Eighth Amendment proportionality review set forth by the United States Supreme Court in *Solem v. Helm*, 463 U.S. 277, 292, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), and determined that a five-year mandatory minimum sentence for offenses committed with a firearm does not offend the Pennsylvania constitutional prohibition against cruel punishments. The *Spells* court observed that the three-prong *Solem* proportionality test examines: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Spells*, 612 A.2d at 462 (*quoting Solem*, 463 U.S. at 292, 103 S.Ct. 3001). The *Spells* court correctly observed that a reviewing court is not obligated to reach the second and third prongs of the test unless "a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Spells, supra* at 463 (*quoting* the controlling opinion of Justice Kennedy in *Harmelin, supra* at 1005, 111 S.Ct. 2680).[4]

Appellant and his amicus (the Defender Association of Philadelphia) do not dispute that the proper analytical model is that articulated in *Spells* and *Solem*, and Appellant does not argue that the Pennsylvania Constitution offers greater pro-

**4.** Justice Kennedy's understanding of the first prong of the *Solem* test as a threshold hurdle in establishing an Eighth Amendment violation has been recently cited with approval by the High Court as well. "A court must begin by comparing the gravity of the offense and the severity of the sentence." *Graham v. Florida*, 560 U.S. 48, 60–61, 130 S.Ct. 2011, 2022, 176 L.Ed.2d 825 (2010). In the "rare case" in which this threshold comparison leads to an inference of gross disproportionality, the reviewing court "should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions." *Id.* "If this comparative analysis 'validate[s] an initial judgment that [the] sentence is grossly disproportionate,' the sentence is cruel and unusual." *Id., quoting Harmelin, supra* at 1005, 111 S.Ct. 2680.

tection against cruel punishments than does the United States Constitution. Nor does Appellant include in his brief a separate analysis under *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991) (setting forth the suggested four-factor analysis to be presented when raising issues implicating the Pennsylvania Constitution). Accordingly, our consideration of the matter under Eighth Amendment jurisprudence is applicable to the claim raised here under the state constitution, and we will not engage in a separate state constitutional review. Moreover, although there has been some disagreement among the members of the High Court regarding whether the Eighth Amendment is understood to require any degree of proportionality between non-capital offenses and their corresponding punishments, *see e.g., Harmelin v. Michigan, supra* at 962–994, 111 S.Ct. 2680 (principal opinion of Scalia, J.), the parties here agree that gross disproportionality is the appropriate standard upon which an Eighth Amendment determination should be made, and we hereby apply that standard to the question raised in this appeal.[5]

A searching review of Eighth Amendment proportionality decisions shows that, with respect to recidivist sentencing schemes, successful challenges are extremely rare. Indeed, the only successful challenge was presented in *Solem, supra*, wherein a South Dakota sentence of life imprisonment without the possibility of parole upon conviction of passing a bad check in the amount of $100 (the defendant's seventh non-violent felony conviction) was held to be unconstitutional. The High Court concluded that the impossibility of parole was a determinative factor in judging the punishment to be disproportion-

5. This Court, in the context of determining whether the death penalty is constitutional, has held "that the rights secured by the Pennsylvania prohibition against 'cruel punishments' are co-extensive with those secured by the Eighth and Fourteenth Amendments." *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937, 967 (1982). We do not here hold that the state and federal constitutions are necessarily co-extensive with respect to non-capital mandatory recidivist sentences. Nevertheless, we analyze this case purely under the federal standard because Appellant argues that resolution of his claim under the federal standard is proper, and that under that standard, a comparison of this sentence to the gravity of his offense raises an inference of gross disproportionality.

ate to the crime. *Solem, supra* at 297–300, 103 S.Ct. 3001. The *Solem* Court specifically distinguished the matter from its prior decision in *Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980), in which the High Court determined that a Texas sentence of life imprisonment with the possibility of parole after twelve years for a conviction of receiving $120.75 by false pretenses (the defendant's third non-violent felony conviction) did not contravene the Eighth Amendment. More recently, in *Ewing v. California*, 538 U.S. 11, 17–20, 30–31, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003), the High Court upheld the constitutionality of a sentence of 25 years' to life imprisonment imposed for the theft of three golf clubs under California's "three strikes" law. In addition, outside the context of recidivist statutes, successful Eighth Amendment challenges to non-capital sentences are equally uncommon. *See Hutto v. Davis*, 454 U.S. 370, 102 S.Ct. 703, 70 L.Ed.2d 556 (1982) (holding that sentence of 40 years' imprisonment for possession of 9 ounces of marijuana with intent to distribute did not contravene the Eighth Amendment); and *Harmelin, supra* (holding that sentence of life imprisonment for possession of 650 grams of cocaine did not contravene the Eighth Amendment).

Turning to the case we are considering here, with respect to the first prong of the proportionality test, both Appellant and his amicus argue that comparing the gravity of the offense to the harshness of the penalty imposed raises an inference of gross disproportionality. Specifically, Appellant claims that the gravity of his offense is less than the gravity of an offense in which a perpetrator commits a direct sexual attack. Appellant characterizes his crime as simple possession of prohibited images, and he takes the position that there was no direct victim of his crime. Appellant maintains that because he had no direct contact with the children in the images, the imposition of a 25–year mandatory minimum term of imprisonment, which Appellant characterizes as tantamount to a life sentence for most adults, is too severe a punishment. Appellant claims an inference of gross disproportionality between his crime and the punishment imposed must be drawn because a person

convicted of the forcible rape of a child under 13 years of age is subject to a mandatory minimum of ten years' imprisonment, which is less than half the mandatory minimum sentence imposed for a second conviction of possessing child pornography. Appellant also argues that the Superior Court erred to the extent it affirmed his judgment of sentence on the basis that the possession of child pornography creates a demand for the production of child pornography. Appellant claims "this type of supply-and-demand analysis has little place in determining whether the sentence was grossly disproportionate[.]" Appellant's Brief at 12.

Similarly, Appellant's amicus argues that Appellant committed a simple possessory offense, and that from a purely subjective "visceral" standpoint, "such a massive sentence for this possessory offense is disproportionately severe." Amicus Curiae's Brief at 15. Appellant's amicus goes on to argue that the supposedly visceral feeling of disproportionality is confirmed by more objective criteria, namely the minimum term ranges for Appellant's crimes contained in the suggested Sentencing Guidelines (which range from 0–16 months in the mitigated range to 9–25 months in the aggravated range for each count); and the length of sentences agreed to by prosecutors in negotiated guilty pleas to child pornography charges where the Commonwealth does not seek the mandatory minimum sentence (which, according to the Amicus Curiae's brief, have ranged from a sentence of probation to a sentence of 121/2 to 25 years' incarceration); and the length of sentences imposed following adjudication by trial or non-negotiated guilty pleas where the Commonwealth does not seek the mandatory minimum sentence (which, according to the Amicus Curiae's brief, have ranged from a sentence of probation to a sentence of 10 to 20 years' incarceration). Amicus Curiae's Brief at 18, 21–22. Appellant's amicus also argues that Section 9718.2 "blurs" the distinctions between more serious sexual offenses (such as rape) and less serious sexual offenses (such as the instant offense), in that a second conviction for either crime results in the same sentence. Amicus Curiae's Brief at 11–12. Appellant's amicus also contends that such

blurring leads to the "anomaly" that the mandatory minimum sentence here exceeds by 500% the otherwise applicable statutory maximum penalty for a felony of the second degree under the Crimes Code.[6] *Id.*

The Commonwealth and its amicus (the Pennsylvania District Attorneys Association) argue that Appellant minimizes the gravity of his offense in order to make the punishment seem too severe by comparison. Stressing that Appellant's crime is not merely the possession of pornography, or simply looking at "dirty pictures," the Commonwealth and its amicus maintain that Appellant's crime is his repeated participation in activity that fosters the sexual abuse of children. Amicus Curiae's Brief at 8. The Commonwealth and its amicus argue that the possession of the prohibited images is a grave offense because the demand for such images perpetuates the sexual abuse of children. The Commonwealth posits that the recidivist sentencing statute at issue was enacted by the legislature in order to protect the children of this Commonwealth from sexual abuse and to deter the crimes of sexual predators. Commonwealth's Brief at 23. The Commonwealth cites to a number of studies and academic articles to support the position that child pornography is frequently a tool used by predators to help groom their child victims, and that a link exists between viewing child pornography and molesting children.

 A presumption exists "[t]hat the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth" when promulgating legislation. 1 Pa.C.S. § 1922(3). Duly enacted legislation is presumed valid, and unless it clearly, palpably and plainly violates the Constitution, it will not be declared unconstitutional. *Commonwealth v. Davidson*, 595 Pa. 1, 938 A.2d 198, 207 (2007). Accordingly, the party challenging the constitutionality of a statute bears a heavy burden of persuasion. *Id.* Moreover, this Court has articulated the principle that "the Pennsylvania prohibition against 'cruel punishments', like its federal coun-

6. The statutory maximum sentence of incarceration for a second-degree felony is ten years. 18 Pa.C.S. § 1103(2).

terpart against 'cruel and unusual punishments', is not a 'static concept.'" *Zettlemoyer, supra* at 967–968 (*quoting Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976)). The concept "must draw its meaning from the evolving standards of decency that mark the progress of a maturing society." *Id.* at 968 (*quoting Gregg,* 428 U.S. at 173, 96 S.Ct. 2909). "[T]he most accurate indicators of those 'evolving standards of decency' are the enactments of the elected representatives of the people in the legislature." *Id.*

The United States Supreme Court has determined that laws proscribing the possession, dissemination and viewing of child pornography are valid against First Amendment challenges. *New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982); *Osborne v. Ohio,* 495 U.S. 103, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990). In doing so, the High Court has recognized that child pornography is the product of a supply-and-demand, underground industry that is "difficult, if not impossible, to solve … by only attacking production and distribution." *Osborne* at 110, 110 S.Ct. 1691. Citing *Osborne* with approval, this Court has determined that Section 6312 is not constitutionally vague or overbroad, and has determined that "it is 'reasonable for a State to conclude that it will decrease the production of child pornography if it penalizes those who possess and view the product, thereby decreasing demand.'" *Commonwealth v. Davidson, supra* at 210 (*quoting Osborne,* 495 U.S. at 109–110, 110 S.Ct. 1691).

Moreover, the High Court has clearly and laudably articulated that the "prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance." *Ferber, supra* at 757, 102 S.Ct. 3348. Part of the reason enormous efforts are made to stamp out the production of child pornography are the pernicious secondary effects of child pornography. The High Court has expressed that because child pornography permanently records a victim's abuse, the "pornography's continued existence causes the child victims continuing harm by haunting the children in years to come." *Osborne, supra* at 111, 110 S.Ct. 1691. Moreover, the role that child pornography plays in harming

children can go beyond the victimization of the children in the images. The High Court has recognized that "evidence suggests that pedophiles use child pornography to seduce other children into sexual activity," *id.*, noting that the Attorney General's Commission on Pornography, for example, states that "[c]hild pornography is often used as part of a method of seducing child victims. A child who is reluctant to engage in sexual activity with an adult or to pose for sexually explicit photos can sometimes be convinced by viewing other children having 'fun' participating in the activity." *Id.* at 111 n. 7, 110 S.Ct. 1691 (*quoting* Attorney General's Commission on Pornography, Final Report 649 (1986)) (additional citation omitted).[7]

■ After careful reflection, we agree that Appellant's crime is much graver than the simple possession of so-called "dirty pictures" where there is no direct victim. Images of child pornography are images of child sexual abuse and exploitation; each image represents a victimized child, and there can be no dispute that those who exploit and abuse children commit very grave offenses. The essence of Appellant's argument with respect to gross disproportionality is that because he himself did not engage in any sexual abuse or exploitation of children, his crime does not warrant a 25–year mandatory minimum sentence, and the 25–year sentence of imprisonment imposed raises an inference of gross disproportionality when compared to his crime. *See* Appellant's Brief at 11–12 ("What Baker did was possess the images. And for twice being convicted of this simple possession of these prohibited images,

7. We stress that there is no evidence that Appellant ever showed the child pornography in his possession to any child or viewed the images in his possession for any purpose other than his own personal sexual stimulation or gratification. We include the finding of the Attorney General's Commission, as reported by the High Court, that child pornography can be a tool used to groom subsequent victims simply to highlight a state's legitimate reasons for seeking to eradicate child pornography. One of the ways in which a state may seek to achieve that end is to enact legislation mandating the imposition of lengthy sentences for recidivist offenders of the law prohibiting the possession of child pornography.

he was sentenced to a mandatory minimum of 25 years in prison.")

We disagree that Appellant's offense is a simple, non-serious, possessory offense. It bears repeating here that Appellant was sentenced under a recidivist sentencing scheme. The fact that Appellant is a repeat offender certainly goes to the gravity of his instant offense. Equally importantly, we cannot view Appellant's crimes as he suggests, in a manner that detaches them from the devastating victimization that child pornography produces. Appellant's participation in the criminal subculture of viewing images of child sexual abuse for personal gratification is part and parcel of that victimization. Appellant's crime is his continued participation as an enabler of sexual crimes against children via his status as a possessor of child pornography. Although Appellant did not personally commit the underlying sexual abuse, he was certainly a willing voyeuristic participant in its commission after the fact, and it is his demand to possess images of child sexual abuse which permits and, to an extent, causes, the production of child pornography. *See Ferber, supra; Osborne, supra; Davidson, supra.* It is unacceptably inaccurate to characterize or label Appellant's crime as the simple possession of "dirty pictures" or the use of an outlaw product. His crime is more accurately understood as secondary or indirect participation in the sexual abuse and exploitation of innocent children for personal gratification.[8] That is a very serious and grave offense. It is certainly no less grave than receiving $120.75 by false pretenses or shoplifting three golf clubs, recidivist offenses for which lengthier sentences of imprisonment than that imposed here were upheld against Eighth Amendment challenges by the Supreme Court of the United States. *See Rummel, supra; Ewing, supra.*

The gravity of the offense, of course, must be compared to the punishment imposed in order to determine whether an inference of gross disproportionality is raised. The sentence here is 25 to 50 years' imprisonment, imposed on May 12,

8. For this very reason, among others, it was determined that he is a Sexually Violent Predator.

2009, with credit for time-served from March 15, 2007. Thus, Appellant, who was thirty-three years of age on the date of sentencing, will be fifty-six years of age at the expiration of his minimum term of imprisonment, and eighty-one years of age at the expiration of his maximum sentence. This is an indeterminate sentence of years with the possibility of parole at some point following expiration of the mandatory minimum sentence. While clearly a lengthy sentence, presuming Appellant will experience an average longevity, the sentence here is not tantamount to a life sentence without the possibility of parole which the High Court struck down in *Solem, supra,* as grossly disproportionate to the recidivist non-violent offense of passing a bad check in the amount of $100.

In sum, we determine that a threshold comparison of the gravity of a second conviction of possessing and viewing child pornography against the imposition of a mandatory sentence of at least 25 years' imprisonment does not lead to an inference of gross disproportionality. Thus, we need not reach the second and third prongs of the test for proportionality review under the Eighth Amendment, and accordingly, we affirm.[9]

9. We note that a number of the arguments presented by Appellant and his amicus, while purportedly supporting a showing under the first prong of the *Solem* analysis, in fact go to the second and third prongs of that comparative test. For example, the arguments presented that others in Pennsylvania convicted of violating Section 6312 have been sentenced to lesser terms of imprisonment, clearly goes to the second prong of the test. *See Solem, supra* at 292, 103 S.Ct. 3001 (comparing "(ii) the sentences imposed on other criminals in the same jurisdiction"). The argument that an "anomaly" exists between the length of the mandatory sentence here and the otherwise statutory maximum sentence for a felony of the second degree goes to the second prong of the test as well. Moreover, we note that Appellant was convicted of 29 counts of violating Section 6312. This Court has held that "the plain language of the statute evidences the intent of the General Assembly to make each image of child pornography possessed by an individual a separate, independent crime under Section 6312(d)," and "that a person charged under Section 6312(d) may be subjected to prosecution and punishment for each depiction of child pornography possessed[.]" *Davidson, supra* at 219, 221. Accordingly, had the Commonwealth not sought imposition of the mandatory minimum sentence under Section 9718.2 in the instant matter, the sentencing court presumably could have sentenced Appellant to 29 consecutive terms of 5 to 10 years' imprisonment, for an aggregate total of 145 to 290 years' imprisonment.

Former Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Justice SAYLOR, EAKIN and BAER join the opinion.

Chief Justice CASTILLE files a concurring opinion in which Justice SAYLOR and Justice TODD join.

Chief Justice CASTILLE, concurring.

I join the Majority Opinion's Eighth Amendment[1] analysis, subject to the reservation I express below in footnote 6. The issue accepted for review purported to sound specifically and exclusively under Article I, Section 13 of the Pennsylvania Constitution, which provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted."[2] The Majority analyzes the constitutional claim exclusively under Eighth Amendment principles governing gross proportionality, however; and properly so because appellant, in point of fact, argues his state constitutional claim only according to the standards announced by the U.S. Supreme Court which govern Eighth Amendment claims sounding in proportionality. Appellant thus reads *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982) (rejecting claim that death penalty was *per se* cruel punishment), abrogated on other grounds by *Commonwealth v. Freeman*, 573 Pa. 532, 827 A.2d 385 (2003), as having established that the analysis of "cruel punishment" claims under the Pennsylvania Constitution must proceed in congruence with the approach of the U.S. Supreme Court.

In my view, the parties misapprehend both what *Zettlemoyer* did and what the case stands for. This Court is not obliged by existing precedent to proceed in lockstep in approaching state constitutional "cruel punishment" claims. Moreover, after reviewing this Court's existing decisional law under

---

1. U.S. Const. amend. VIII.

2. The issue, as specified in this Court's order granting review, is as follows: "Does the 25–year mandatory minimum sentence of imprisonment imposed under 42 Pa.C.S. § 9718.2 violate Article I, Section 13 of the Pennsylvania Constitution as it is grossly disproportionate to the crime?"

Article I, Section 13 (including, but not limited to, *Zettlemoyer*), I believe that the type of claim pursued here could and should warrant a different approach under Article I, Section 13. I write separately to address what I believe would be the proper state constitutional approach.

Initially, *Zettlemoyer* did not purport to establish that all claims arising under Article I, Section 13 should be treated as if they were subject to the same standards that would govern an equivalent Eighth Amendment claim. *Zettlemoyer* was not a legislative enactment, but a judicial opinion deciding a specific issue. That issue was posed in *per se* fashion, specifically: whether capital punishment was unconstitutionally cruel under Article I, Section 13. It was a difficult claim to make in a jurisdiction where the death penalty had a long history and where the Legislature had specifically and recently reapproved the punishment.

In *Commonwealth v. Edmunds*, 526 Pa. 374, 586 A.2d 887 (1991),[3] this Court was explicit in its recognition that we are not obliged to follow federal constitutional law in lockstep when construing similar provisions of the Pennsylvania Constitution. There we stated:

> This Court has long emphasized that, in interpreting a provision of the Pennsylvania Constitution, we are not bound by the decisions of the United States Supreme Court which interpret similar (yet distinct) federal constitutional provisions.... [While] the federal constitution establishes certain minimum levels which are equally applicable to the analogous state constitutional provision ... each state has the power to provide broader standards, and go beyond the minimum floor which is established by the federal Constitution.

*Id.* at 894 (citations omitted).

Notably, the wording of Article I, Section 13, prohibiting "cruel punishments," is not identical to that of the Eighth

---

**3.** *Edmunds* is the seminal opinion from this Court setting forth the factors to be considered in determining whether a provision of the Pennsylvania Constitution affords broader protections than its federal counterpart.

Amendment which prohibits "cruel and unusual punishments." Moreover, this Court has conducted a separate Article I, Section 13 analysis, both before and after *Edmunds,* even in instances where the Court determined that the governing Pennsylvania rights and constitutional standards were coextensive with the federal approach. This was so in *Zettlemoyer* itself,[4] the first Article I, Section 13 case of any real moment issued by the Court. The Eighth Amendment claim in *Zettlemoyer* was controlled by authority from the U.S. Supreme Court, *Gregg v. Georgia,* 428 U.S. 153, 169, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) ("We now hold that the punishment of death does not invariably violate the Constitution."). But, the *Zettlemoyer* Court did not stop there, notwithstanding its holding that the rights secured by Article I, Section 13 were coextensive with the rights secured by the Eighth Amendment. To the contrary, the Court went on to independently analyze the claim at some length in light of specific indicators in Pennsylvania history. *Id.* at 967–69. This is significant in and of itself, since two independent jurisdictions, applying the same standard, easily could devise separate principles in application. Thus, *Zettlemoyer* itself undermines the broad proposition with which appellant begins and ends his state constitutional analysis. Properly understood, *Zettlemoyer* recognized that even an equivalency in governing constitutional standards does not mean that the Court is absolved of the duty to independently review a properly presented state constitutional claim.

The Opinion Announcing the Judgment of the Court ("OAJC") in *Commonwealth v. Means,* 565 Pa. 309, 773 A.2d 143 (2001) (*"Means OAJC"*) further undermines any equivalency assumption. The relevant issue in *Means* was whether a statute allowing victim impact evidence at the penalty phase of capital trials violated either the Eighth Amendment or Article I, Section 13 of the Pennsylvania Constitution. Under *Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d

---

4. There is no indication that a separate and developed state constitutional analysis was forwarded in Zettlemoyer's brief; notably, the case predated *Edmunds.*

720 (1991), the Eighth Amendment claim forwarded was meritless. But, the *Means OAJC* did not stop there; it engaged in an analysis of the issue under Article I, Section 13, pursuant to *Edmunds*, ultimately concluding that the legislation was not constitutionally infirm. *Means*, 773 A.2d at 149–58. If the Court had believed that all Article I, Section 13 claims required lockstep devotion to federal law interpreting the Eighth Amendment, the *Means* OAJC could have refrained from further state constitutional analysis.

And, finally, in *Commonwealth v. Batts*, 66 A.3d 286 (Pa. 2013) (decided after the briefing here), the Court recently considered, *inter alia*, whether a categorical ban on the imposition of life-without-possibility-of-parole sentences on juvenile murderers was required by Article I, Section 13, in light of the U.S. Supreme Court's Eighth Amendment decision in *Miller v. Alabama*, —— U.S. ——, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012). Mr. Justice Saylor's unanimous Opinion in *Batts* engaged in an Article I, Section 13 argument on the merits, notwithstanding the fact that the argument was developed primarily in terms of the Eighth Amendment, and that Batts had not provided a fully developed *Edmunds* analysis. The *Batts* Court recognized that this Court's prior holdings that Article I, Section 13 was coextensive with the Eighth Amendment arose only in discrete contexts. *See id.* at 298 n. 5.[5] The point is that claims of cruel punishment may warrant a separate analysis under the U.S. and Pennsylvania Constitutions, as the two could conceivably yield different results in the same factual scenario, particularly where there is some basis for a distinct state constitutional approach.

I agree with the Majority that appellant's twenty-five year mandatory minimum sentence for a second offense of posses-

---

**5.** The *Batts* Court cited *Zettlemoyer; Commonwealth v. 5444 Spruce St.,* 574 Pa. 423, 832 A.2d 396, 399 (2003) (addressing excessive fines provision); and *Jackson v. Hendrick*, 509 Pa. 456, 503 A.2d 400, 404 n. 10 (1986) (addressing prison conditions). In *Means*, the Court likewise recognized that *Zettlemoyer* spoke to a coextensive standard only within the context in which that case was decided. *Means*, 773 A.2d at 151 (OAJC) (recognizing that *Zettlemoyer* holding was distinguishable because different Article I, Section 13 challenge was involved).

sion of child pornography does not run afoul of the Eighth Amendment, given the mandated federal approach. And, since appellant's state constitutional argument assumes that the same approach should be followed under Article I, Section 13, his current claim necessarily fails. But, I view it as an open question whether Pennsylvania should follow a different approach to constitutional sentencing proportionality claims.

There is a colorable claim to be made that the federal test for gross disproportionality should not be followed lockstep in Pennsylvania, certainly at least insofar as it includes a federalism-based constraint that looks to sentences for similar offenses in other states. I recognize that the predicate question would be whether notions of proportionality are subsumed within the Pennsylvania proscription against cruelty at all. But, assuming that key question were answered affirmatively, a defendant pursuing a Pennsylvania sentencing disproportionality claim may allege that comparative and proportional justice is an imperative within Pennsylvania's own borders, to be measured by Pennsylvania's comparative punishment scheme. In that circumstance, it may be that the existing Eighth Amendment approach does not sufficiently vindicate the state constitutional value at issue, where sentencing proportionality is at issue.

In my tentative view, the potential "cruelty" in the existing mandatory minimum sentencing scheme for this recidivist conduct—if there can be said to be such—would arise not from the mandatory term of twenty-five years on its face, but in the rationality of the legislatively dictated sentence when considered in light of the broader relevant sentencing construct. Appellant was convicted of multiple counts of possession of child pornography in violation of 18 Pa.C.S. § 6312(d)(1). Any offense involving the abuse and exploitation of children is grave, and the General Assembly is fully empowered to take measures designed both to punish and to deter such offenders. The Majority has explained at length why this crime, though it may not involve the persons who actually committed the horrific assaults upon the children depicted in the images, nevertheless is pernicious and loathsome; the demand for the

images directly encourages the unspeakable abuse.[6] *See Commonwealth v. Davidson*, 595 Pa. 1, 938 A.2d 198, 215 (2007) ("[t]he purpose of Section 6312 is plainly to protect children, end the abuse and exploitation of children, and eradicate the production and supply of child pornography."). In addition, establishing enhanced penalties for recidivists—for those who, after one corrective round, nevertheless "hardeneth [their] neck[s]"[7] and reoffend—is no less rational a course for the Legislature.

The potential difficulty is with the delivery of comparative justice in punishment. Assuming that Article I, Section 13 requires some sort of rational legislative approach to comparative punishments, measuring proportionality claims by analyzing the legislative treatment of punishments for other crimes in Pennsylvania is the logical starting point, as it offers ascertainable and objective criteria.

Appellant did not himself commit the sexual assaults depicted in the photographs he possessed; the criminal acts depicted subjected those offenders to prosecution under Chapter 31 of the Crimes Code. Notably, the General Assembly has graded both rape and involuntary deviate sexual intercourse ("IDSI") as first-degree felonies, both punishable by a maximum term of twenty years imprisonment, even for first offenses. *See* 18 Pa.C.S. §§ 3121 (rape), 3123 (IDSI); § 1103(1)

**6.** Having said this, certain of the Majority's characterizations are exaggerated if not inaccurate. For example, I do not understand appellant's position as being that his crime was a "simple, non-serious, possessory offense" involving "so-called 'dirty pictures.'" Rather, the core of appellant's argument is that, while an offense against children cannot be taken lightly, his sentence is cruel because it is disproportionate to his crime in that it far exceeds sentences imposed on other offenders for similar behavior, as well as sentences imposed upon those who actually commit sexual assaults upon children, those who commit violent offenses inflicting serious bodily injury, and intentional killers. Appellant does not dispute that punishment for possession of child pornography properly may be severe. The question he poses is: how proportionately severe? Likewise, the Majority's suggestion that appellant was an "after the fact" "willing voyeuristic participant" in the actual commission of the sexual assaults depicted gratuitously overstates the offense.

**7.** *Commonwealth v. Shiffler*, 583 Pa. 478, 879 A.2d 185, 195 (2005) (quoting *Commonwealth v. Dickerson*, 533 Pa. 294, 621 A.2d 990, 992 (1993)) (further quotation omitted).

(prescribing punishment). By statutory definition, either criminal act with a child under the age of 13 establishes the crime. Only murder convictions (and certain recidivist offenses) expose the defendant to a greater amount of prison time than first-degree felonies.

Nor was appellant convicted of photographing, videotaping, depicting or filming child sexual activity in violation of 18 Pa.C.S. § 6312(b), or of dissemination of photographs, videotapes, computer depictions or films of child sexual activity in violation of Section 6312(c). The General Assembly has classified any conviction under Section 6312(b) as a second degree felony, even for a first offense, exposing a defendant to a maximum of ten years imprisonment for a first offense, or subsequent offenses. *See* 18 Pa.C.S. 1103(2). A conviction under 6312(c) is legislatively classified as a third degree felony for a first offense (seven year maximum under 18 Pa.C.S. 1103(3)), and a second degree felony for a second or subsequent offense (ten year maximum, 18 Pa.C.S. 1103(2)).

Appellant's relevant convictions were exclusively for possession in violation of Section 6312(d)(1), a crime that, like distribution of child pornography, has been graded by the General Assembly as a third degree felony for a first offense. Under 18 Pa.C.S. § 1103(3), therefore, the maximum term of imprisonment to which an offender might be sentenced for this crime is seven years for a first offense. In fact, for his first offense, appellant was not sentenced to a term of imprisonment at all, but to 60 months of intermediate punishment, with credit for time served. A second conviction for the same offense is classified more seriously, as a second degree felony, but the General Assembly still has not deemed the offense to be as serious as the underlying sexual assaults of children that are depicted. Absent the mandatory sentencing provision, a second time offender would be subject to a maximum term of ten years imprisonment under 18 Pa.C.S. § 1103(2). As a result of 42 Pa.C.S. § 9718.2(a)(1), however, the mandatory **minimum** for a second offense for possession of child pornography is twenty-five years, which is the same term facing recidivist offenders under Sections 6312(b) and (c).

In short, the overall legislative framework logically recognizes differences in levels of gravity as between sexually assaulting a child (most serious), the filming of such crimes (next most serious), and distributing or possessing the resulting child pornography (third most serious). The recidivist provision, however, draws no such distinctions, and treats the third most serious offense the same as the most serious one. An individual such as appellant, who is convicted of possessing child pornography for the second time, is mandated to serve a least five more years of prison time than the maximum term allowable for a first time child rapist.

By way of further comparison, second time violent offenses such as third degree murder, voluntary manslaughter, manslaughter of a law enforcement officer, third degree murder involving an unborn child, aggravated assault, terrorism, human trafficking, burglary, robbery, drug delivery resulting in death, arson and criminal solicitation to commit murder each carry mandatory minimum sentences of only ten years. 42 Pa.C.S. § 9714(a), (g). Under the legislative scheme, an individual such as appellant, who is convicted of possessing child pornography for the second time, but through no act of violence, is mandated to serve at least fifteen more years of prison time than the minimum term required for a second time violent offender.

There appears to be a rational and carefully calibrated legislative scheme of offense gradation and punishment for first time sex offenders, which disappears when it comes to recidivist offenders. Even aside from potential constitutional concerns, I would invite the General Assembly to examine the issue.

Justice SAYLOR and Justice TODD join the opinion.