IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Melvin Chappell,                          :
                          Appellant       :
                                          :
            v.                            :
                                          :
Commonwealth of Pennsylvania,             :
Department of Transportation,             : No. 431 C.D. 2022
Bureau of Driver Licensing                : Argued: September 9, 2024


BEFORE:   HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE CHRISTINE FIZZANO CANNON, Judge
          HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION
BY JUDGE FIZZANO CANNON                         FILED: October 11, 2024

            This matter returns to us after our remand in *Chappell v. Department of Transportation, Bureau of Driver Licensing* (Pa. Cmwlth., No. 431 C.D. 2022, filed October 18, 2023), 2023 WL 6862003 (unreported) (*Chappell I*). Our remand directed the Court of Common Pleas of Philadelphia County (trial court) to provide a new decision addressing the constitutional claims raised by Melvin Chappell (Chappell). *Id.*, slip op. at 12, 2023 WL 6862003, at *6. The trial court's original order of April 8, 2022, denied and dismissed Chappell's appeal from a July 5, 2019 determination of the Department of Transportation, Bureau of Driver Licensing (Department). The Department imposed a lifetime disqualification on Chappell's commercial driver's license (CDL) due to his second conviction of driving under the influence of alcohol (DUI), pursuant to the Uniform Commercial Driver's License Act (CDL Act), 75 Pa.C.S. §§ 1601-1622. Upon review, we affirm the trial court's original order of April 8, 2022.

## I. Factual & Procedural Background

The underlying facts are not in dispute and were set forth in full in *Chappell I*. Briefly, Chappell received his CDL in 1993. *Chappell I*, slip op. at 2, 2023 WL 6862003, at \*1. In 2007, Chappell committed a DUI while driving his personal vehicle, for which he received a one-year suspension of his CDL pursuant to Section 1611(a)(1) of the CDL Act. *Id*., 2023 WL 6862003, at \*1. In 2018, he committed a second DUI, also while driving his personal vehicle, and in 2019, the Department notified him that pursuant to Section 1611(c) of the CDL Act, his CDL would be disqualified for life.[1] *Id*., slip op. at 2-3, 2023 WL 6862003, at \*\*1-2. Chappell appealed to the trial court, which held a hearing in February 2020 at which Chappell acknowledged that his two DUIs subjected him to lifetime disqualification pursuant to Section 1611(c). *Id*., slip op. at 4, 2023 WL 6862003, at \*2. However, he asserted at the hearing that lifetime disqualification of his CDL was grossly disproportionate to the offense of two DUIs and amounted to cruel and unusual punishment under the Eighth Amendment to the United States Constitution, U.S. CONST. amend. VIII. *Id*., 2023 WL 6862003, at \*2. He also testified to the financial hardship that disqualification of his CDL had caused him. *Id*., 2023 WL 6862003, at \*2.

On April 8, 2022, the trial court issued an order denying and dismissing Chappell's appeal. *Chappell I*, slip op. at 4, 2023 WL 6862003, at \*2. In its subsequent opinion, the trial court stated that, as applied, Section 1611(c) of the Act required lifetime disqualification of Chappell's CDL based on his two DUIs. *Id*., slip op. at 5, 2023 WL 6862003, at \*2. Although Chappell had raised and presented

---

[1] Chappell committed a prior DUI in 1993, which was resolved via accelerated rehabilitative disposition (ARD). *Chappell I*, slip op. at 2, 2023 WL 6862003, at \*1. Until the CDL Act was amended in 2005, that DUI would not be counted as a conviction for purposes of CDL suspension or disqualification.

evidence in support of his Eighth Amendment claim at the February 2020 hearing, the trial court stated in its opinion that he had failed to do so. *Id.*, 2023 WL 6862003, at *2.

Chappell appealed to this Court, which determined after *en banc* argument that he had raised and supported his constitutional claim before the trial court. *Chappell I*, slip op. at 11, 2023 WL 6862003, at *5. Accordingly, we remanded for the trial court to issue a new decision addressing Chappell's constitutional claim in the context of the relevant case law, primarily *Shoul v. Department of Transportation, Bureau of Driver Licensing*, 173 A.3d 669 (Pa. 2017) (concluding that lifetime disqualification of CDL constituted punishment for Eighth Amendment purposes and remanding to trial court for proceedings on gross disproportionality). *Id.*, slip op. at 12, 2023 WL 6862003, at *6. Although our remand order did not direct the trial court to hold another hearing and retained jurisdiction over the matter, the trial court held another hearing in November 2023. N.T., Nov. 30, 2023. Counsel for the Department introduced himself at the outset of the hearing, but did not object to the hearing as improper or outside of the trial court's remand mandate. *See id.*, slip op. at 6.

At the November 2023 hearing, Chappell updated his testimony, stating that he was working for a former employer but because he did not have a CDL, he was earning about 25-30% of what he earned before. N.T., Nov. 30, 2023, at 20-22. He had to file for bankruptcy and was behind on his mortgage even after a loan modification. *Id.* at 22-23. He stated that he has learned his lesson and now only drinks at home on special occasions. *Id.* at 40 & 51.

On January 29, 2024, the trial court issued its second opinion. The court concluded that, as applied to Chappell's case, lifetime disqualification of his

3

CDL pursuant to Section 1611(c) was grossly disproportionate punishment that violated the Eighth Amendment. Trial Ct. Op., Jan. 29, 2024, at 15. Accordingly, the court recommended that the Department's lifetime disqualification of Chappell's CDL should be reversed. *Id*. This matter is now ripe for disposition by this Court.

## II. Discussion

### A. Propriety of the Trial Court's November 2023 Hearing

Before we reach the merits, we must address the propriety of the trial court's November 2023 post-remand hearing at which it took new evidence. In May 2024, this Court directed the parties to provide supplemental briefing on the issue. *See* Order, May 10, 2024.

Chappell asserts that although this Court's remand order did not specifically direct the trial court to hold a hearing and take new evidence, our order did direct the trial court to proceed "consistent with the course taken by our Supreme Court in *Shoul*," where the remand instructed the trial court to undertake "further proceedings consistent with this opinion." Chappell's Suppl. Br. at 7 (citing *Shoul*, 173 A.3d at 688). Chappell adds that the Department did not object to the November 2023 hearing. *Id*. Chappell suggests, in the alternative, that the trial court's holding of the November 2023 hearing was harmless error and there is no basis to expend additional judicial time and resources by returning the matter to the trial court yet again. *Id*. at 8-9. The Department responds that the trial court's November 2023 hearing exceeded this Court's remand mandate and improperly gave Chappell "the proverbial second bite at the apple." Dep't's Suppl. Br. at 10. The Department proposes that the matter should be remanded to the trial court to issue a new decision based solely on the evidence taken at the February 2020 hearing. *Id*. at 11.

4

Pennsylvania Rule of Appellate Procedure 2591, which governs remands, states:

> (a) **General rule**. On remand of the record the court or other government unit below shall proceed in accordance with the judgment or other order of the appellate court and, except as otherwise provided in such order, Rule 1701(a) (effect of appeals generally) shall no longer be applicable to the matter.

> (b) **Enforcement of appellate court orders**. At any time, upon its own motion or upon application, an appellate court may issue any appropriate order requiring obedience to or otherwise enforcing its judgment or other order.

Pa.R.A.P. 2591.

Here, this Court's remand order in *Chappell I* did not direct the trial court to hold a new hearing or even state that the remand was for "further proceedings," which may reasonably be interpreted as encompassing additional hearings and evidence. *See SugarHouse HSP Gaming, L.P. v. Pa. Gaming Control Bd.*, 162 A.3d 353, 371-72 (Pa. 2017). The remand order in *Chappell I* stated only that the matter was remanded to the trial court "for a new decision in accordance with this opinion within 60 days of the date of this order"; moreover, we retained jurisdiction over the matter. *Chappell I*, slip op. at 12, 2023 WL 6862003, at *6. Chappell is correct that *Chappell I* referenced *Shoul*, where our Supreme Court remanded for development of the record and a "meaningful analysis" by the trial court. *See Shoul*, 173 A.3d at 687. However, in *Shoul*, our Supreme Court expressly remanded for "further proceedings" and relinquished jurisdiction. *Id*. at 688. Such was not the case with our remand order in *Chappell I*.

Given the circumstances here, the trial court exceeded the scope of our remand order in *Chappell I* and lacked jurisdiction to conduct another hearing in

5

November 2023 at which it took additional testimony from Chappell.  Even though the parties both participated in the hearing with no objections, subject matter jurisdiction cannot be conferred by agreement.  *Pennsylvanians for Union Reform v. Centre Cnty. Dist. Atty's Off.*, 139 A.3d 354, 356 (Pa. Cmwlth. 2016).  Accordingly, this opinion will not address the evidence taken at the November 2023 hearing and will rely only on Chappell's testimony from the initial February 2020 hearing.  We now proceed to the merits.

## B.  Gross Proportionality Analysis

A presumption exists that the General Assembly does not intend to violate the United States Constitution when promulgating legislation.  *See* 1 Pa.C.S. § 1922(3).  "Duly enacted legislation is presumed valid, and unless it clearly, palpably and plainly violates the Constitution, it will not be declared unconstitutional.  Accordingly, the party challenging the constitutionality of a statute bears a heavy burden of persuasion."  *Commonwealth v. Baker*, 78 A.3d 1044, 1050 (Pa. 2013) (citation omitted).  Moreover, "the legislature has the exclusive power to pronounce which acts are crimes, to define crimes, and to fix the punishment for all crimes," including mandatory punishments where, in the legislature's judgment, "such a sentence is necessary."  *Commonwealth v. Eisenberg*, 98 A.3d 1268, 1283 (Pa. 2014).

Section 1611(c) of the CDL Act states, in pertinent part: "[T]he [D]epartment shall disqualify for life any person convicted of two or more violations of any of the offenses specified in subsection (a) . . . ."  75 Pa.C.S. § 1611(c) (emphasis added).  Relevant to this appeal, subsection (a) references Section 3802 of the Vehicle Code, which includes the provisions governing Chappell's 2007 and

6

2018 DUIs, *i.e.*, "general impairment" and "high rate of alcohol." 75 Pa.C.S. § 3802(a) & (b). There is no dispute that Section 1611(c) is penal in nature:

> In general, operating a motor vehicle is a privilege, not a right. Yet, Section 1611(c) does not have any effect upon this privilege; CDL holders disqualified for life under Section 1611(c) do not lose the privilege to operate a motor vehicle; instead, these CDL holders lose the right to practice their chosen profession. The severity of this sanction transforms what is a remedial law in the context of a one year disqualification, into a penal law.

*Sondergaard v. Dep't of Transp., Bureau of Driver Licensing*, 65 A.3d 994, 997 (Pa. Cmwlth. 2013) (holding in a non-constitutional case that Section 1611(c) applies to CDL holders regardless of whether their DUIs occur while they are driving commercial or personal vehicles). Although Section 1611(d) of the CDL Act, 75 Pa.C.S. § 1611(d), states that the Department "may issue regulations establishing guidelines, including conditions, under which a disqualification for life under subsection (c) may be reduced to a period of not less than ten years, if such reductions are permitted by Federal regulations," the Department confirmed at Chappell's February 2020 hearing that the lifetime CDL disqualification has not yet been modified by a Department regulation.[2] Reproduced Record (R.R.) at 35a-36a.

In *Solem v. Helm*, 463 U.S. 277 (1983), the defendant committed his seventh non-violent felony, passing a bad check, and was subject under South Dakota's recidivist statute to life imprisonment without the possibility of parole. *Id.* at 280. The United States Supreme Court deemed the punishment grossly disproportionate to the offense in violation of the Eighth Amendment's prohibition

---

[2] Legislation has been proposed to allow reduction of a lifetime CDL disqualification to ten years under certain circumstances; however, the General Assembly has not acted on that proposed legislation. *See* 2023 Pa H.B. 1092.

on cruel and unusual punishment.[3]  *Id*. at 286-89.  The Court provided "objective factors" for courts to address when considering a proportionality challenge: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions."  *Id*. at 292. Consideration of the first factor is mandatory: "First, we look to the gravity of the offense . . . [;] a court must consider the severity of the penalty in deciding whether it is disproportionate."  *Id*. at 291 (citations omitted). "[A] reviewing court is not obligated to reach the second and third prongs of the test unless a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality."  *Commonwealth v. Baker*, 78 A.3d 1044, 1047 (Pa. 2013).    Given the heavy burden to establish unconstitutionality, successful challenges in this context have been rare.  *Shoul*, 173 A.3d at 686-87.

In *Shoul*, our Supreme Court addressed an Eighth Amendment challenge to Section 1611(e) of the CDL Act, 75 Pa.C.S. § 1611(e), which imposes a lifetime CDL disqualification on drivers convicted of using a motor vehicle to commit drug trafficking offenses.  The Court confirmed that Section 1611(e) is punitive in nature and that the *Solem* test is applicable.  173 A.3d at 684-86.  The Court also stated the following with regard to the penalty harshness aspect of the test, referring to *Commonwealth v. 1997 Chevrolet & Contents Seized from Young*, 160 A.3d 153 (Pa. 2017), a civil forfeiture case:

---

[3] "This prohibition applies to both the federal government and, via the United States Constitution's Fourteenth Amendment guarantee of due process, to state governments."  *Shoul v. Dep't of Transp., Bureau of Driver Licensing*, 173 A.3d 669, 682 n.12 (Pa. 2017) (citing cases). Pennsylvania's Constitution similarly provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted."  PA. CONST. art. I, § 13. The two provisions are considered coextensive. *Shoul*, 173 A.3d at 682 n.13.

> Specifically, noting that the United States Supreme Court has largely left it to lower courts to further develop the intricacies of the gross disproportionality inquiry, we catalogued myriad factors relevant to determining the harshness of a particular penalty—including, *inter alia*, the objective and subjective value of the property forfeited to the owner and third parties, such as whether forfeiture would deprive the property owner of his livelihood—as well as factors salient in determining the gravity of an offense—including, *inter alia*, the nature of the offense, the offender's sentence as compared to the maximum available sentence for the offense, the regularity of the defendant's criminal conduct, and any actual harm arising from the offense other than a "generalized harm to society."

*Shoul*, 173 A.3d at 686. However, as noted above, the Court in *Shoul* could not complete the analysis because the trial court record was underdeveloped. *Id*. at 687.

After *Shoul* was remanded, it was apparently resolved and did not return to our appellate courts. Accordingly, the application of the *Solem* test to Section 1611 of the CDL Act presents an issue of first impression. Given the parameters set forth in *Baker*, we must initially focus on the first *Solem* factor, the gravity of the offense and the harshness of the penalty, to determine whether Chappell has identified an inference of gross proportionality between the offense of two DUIs and the penalty of lifetime CDL disqualification. *Baker*, 78 A.3d at 1047. If he has, then we may consider the second and third elements of the *Solem* test. *Id*.

Chappell does not engage in a full *Solem* analysis, but argues that given his age and financial hardships, a lifetime CDL disqualification constitutes cruel and unusual punishment and that a one-year suspension, which is the penalty under Section 1611(a)(1) for a first DUI, is appropriate. Chappell's Br. at 7 & 10. The Department, following *Solem*, responds that the gravity of the offense is serious given the dangers of drunk driving and that the penalty is not overly harsh because

9

commercial vehicles are larger and heavier and can do more damage. Dep't's Br. at 16-22. The Department notes that this is the case even if a CDL holder's DUIs do not occur in commercial vehicles. *Id*. (citing *Sondergaard*).

Concerning the gravity of the offense, the Department is correct. Section 1611 does not exist in a vacuum. Section 1602(a)(2) of the CDL Act states that it implements the federal Commercial Motor Vehicle Safety Act of 1986, 49 U.S.C. §§ 31301-31317, with the express goal of improving road safety by "[d]isqualifying commercial drivers who have committed certain serious traffic violations or other specified offenses." 75 Pa.C.S. § 1602(a)(2). Section 1602(b) of the CDL Act adds that it is a remedial law "and shall be liberally construed to promote the public health, safety and welfare." 75 Pa.C.S. § 1602(b). Federal regulations recommend lifetime CDL disqualification for a second DUI conviction, and failure to substantially comply with the relevant federal laws can result in a state losing its federal highway funding. *See* 49 C.F.R. § 383.51 (2021), Table 1. In a 2002 Final Rule, the Federal Motor Carrier Safety Administration (FMCSA) described the particular dangers of DUIs committed by commercial drivers:

> CDL holders are, unlike most licensed passenger car drivers, professional drivers. They earn their living by operating large, heavy vehicles and/or transporting passengers. Given their status as professionals, CDL holders are held to a higher standard. CDL holders should not engage in risky, unsafe behavior while pursuing their profession—driving. The Congress has chosen, in the interest of safety, not to distinguish between risk-taking behavior in a passenger car or a CMV [(commercial motor vehicle)].

67 Fed. Reg. 49744 (2002). In a 2003 amendment, the FMCSA defended lifetime disqualification of CDL holders after two DUIs:

10

> Although the FMCSA could have proposed and adopted less stringent penalties, the agency chose to impose the maximum penalties provided by the statute to ensure the highest level of safety. To achieve our safety objectives, we must disqualify CDL holders who represent an unacceptable safety risk to the motoring public by failing to refrain from the use of controlled substances, and consuming alcoholic beverages prior to driving a motor vehicle. There is no readily apparent reason why the agency should consider DUI committed by a professional CMV driver to be less severe when committed in a non-CMV during off-duty hours, than in a CMV while on duty. The conviction for such a serious offense in the non-CMV suggests that the CDL holder is more likely to commit the same offense in a CMV, than a CDL holder who has never committed such an offense. The FMCSA must take action to reduce to the greatest extent practicable, the likelihood of unsafe drivers being allowed to operate CMVs on public roads.
>
> With the publication of the July 31, 2002, final rule, all CDL holders should now be aware that a conviction for DUI while operating a non-CMV could have a significant adverse impact on their driving careers. These drivers have a choice between sharing the road responsibly with other motorists at all times, regardless of the type of vehicle being operated, or engaging in unsafe driving practices with the potential of being subjected to enforcement actions and ultimately disqualification. The agency's decision represents an appropriate use of its statutory authority, and will help to ensure national uniformity and consistency in the administration of the CDL program.

68 Fed. Reg. 4394-95 (2003). This Court has also stated as follows, albeit in a case that did not address the Eighth Amendment:

> It is not unreasonable for a legislative body also to suppose that a person who operates any automobile under the influence of alcohol is at greater risk to repeat this conduct in a commercial vehicle, which is capable of horrific destruction on Pennsylvania's highways. [The CDL Act] advances a public interest, *i.e.*, reduction of commercial

11

> vehicle accidents, and it is not for judges to second guess this judgment of the legislature on how to achieve this goal when it is not obviously arbitrary.

*Thorek v. Dep't of Transp., Bureau of Driver Licensing*, 938 A.2d 505, 512 (Pa. Cmwlth. 2007).

The CDL Act has been in compliance with the foregoing federal pronouncements and enactments since amendments in 2005, but Section 1611(c), imposing lifetime CDL disqualification for two DUIs, has been in place since the CDL Act became effective in 1992. This reflects the General Assembly's longstanding comprehension of the unquestionable dangers of drunk driving by CDL holders, which in turn reflects that the offense carries a high degree of gravity in this analytical context.

We next consider the harshness of the penalty of lifetime CDL disqualification for two DUI convictions. Chappell testified at the February 2020 hearing as to the financial hardships he suffered since his CDL was revoked. Nor is Chappell alone; even without his testimony, the penalty is severe. In the absence of Department regulations or an amendment to the CDL Act allowing for mitigation reducing a lifetime disqualification to a ten-year suspension, as authorized by Section 1611(d) of the CDL Act, we recognize that application of Section 1611(c) "results in the imposition of a severe sanction in every case." *Dietrich v. Dep't of Transp., Bureau of Driver Licensing*, 82 A.3d 1087, 1092 (Pa. Cmwlth. 2013) (reversing trial court's equitable reduction of lifetime CDL disqualification to a five-year suspension). However, the legislature has not granted our courts the "authority or discretion to modify the mandatory penalty imposed by the Department under section 1611(c)," regardless of its severity. *Id.*

12

Although lifetime CDL disqualification is a severe penalty, Chappell is not in prison, nor is he unable to work or even drive a personal vehicle for work purposes. The right to practice one's chosen profession is not absolute; it is "subject to the lawful exercise of the Commonwealth's power to protect the health, safety, welfare, and morals of the public by regulating the profession." *Haveman v. Bureau of Pro. & Occupational Affs., State Bd. of Cosmetology*, 238 A.3d 567, 574 (Pa. Cmwlth. 2020). Accordingly, the penalty here, while serious, is not so harsh as to outweigh the gravity of the offense at issue. It certainly does not rise to the level of life imprisonment without the possibility of parole for passing a bad check, as in *Solem*.

Regarding the additional factors of the first part of the *Solem* test, as set forth in *1997 Chevrolet* and as relevant to this inquiry, we first consider the regularity of Chappell's criminal conduct. Although Chappell has had no DUIs since the 2018 offense that triggered his lifetime CDL disqualification, this is technically his third DUI conviction (1993, 2007, and 2018). However, as we discuss in footnote 1 above, his first DUI in 1993 did not count as a "conviction" for purposes of CDL suspension or disqualification as it would since the 2005 amendments to the CDL Act. For purposes of this analysis, then, we do not consider it. We next consider the actual harm, rather than general societal harm, caused by his DUIs. Fortunately, Chappell's DUIs did not result in any actual harm to others.

*Solem* presented the United States Supreme Court with a clear instance where the punishment was grossly proportionate to the crime: life imprisonment without the possibility of parole for the nonviolent felony of passing a bad check. 463 U.S. at 281. The operation of South Dakota's recidivism statute resulted in those circumstances because it was the defendant's seventh felony conviction. *Id.* This

case is factually closer to *Baker*, where the defendant's second conviction of possessing child pornography resulted in a mandatory minimum 25-year prison sentence. 78 A.3d at 1045.

Applying the *Solem* test in *Baker*, our Supreme Court concluded that the offense in question was "much graver than the simple possession of so-called 'dirty pictures' where there is no direct victim." 78 A.3d at 1051. The Court noted that it was Baker's second conviction of the same crime and that his status as a repeat offender "certainly goes to the gravity of his instant offense." *Id.* Nor, the Court noted, is possession of child pornography victimless, and it is "certainly no less grave than receiving $120.75 by false pretenses or shoplifting three golf clubs, recidivist offenses for which lengthier sentences of imprisonment than that imposed here were upheld against Eighth Amendment challenges by the Supreme Court of the United States." *Id.* at 1052. Concerning the harshness of the penalty, the Court acknowledged that while a minimum of 25 years in prison is "clearly a lengthy sentence," it was not tantamount to "a life sentence without the possibility of parole which the High Court struck down in *Solem* . . . as grossly disproportionate to the recidivist non-violent offense of passing a bad check in the amount of $100." *Id.*

Here, similarly, Chappell received a mandatory penalty of lifetime CDL disqualification for his second DUI conviction. As discussed above, a second DUI committed by a CDL holder is a grave offense, given public safety concerns that are patently reasonable, as described by the FMCSA. The penalty here is harsh, but commensurate with the gravity of the offense.[4] Accordingly, as in *Baker*, we

---

[4] Concerning the relevant *1997 Chevrolet* concerns, Chappell's first 1993 DUI that did not result in a conviction based on the law in effect at that time is not relevant in this case, and the lack of actual harm his second and third DUIs caused weighs in his favor; however, these are secondary to the primary consideration of the triggering offenses' gravity and the harshness of the penalty.

conclude that Section 1611(c) of the CDL Act, which imposes lifetime CDL disqualification for a second DUI conviction, does not create an inference of gross disproportionality such that the statute violates the Eighth Amendment. Thus, we need not reach the second and third prongs of the *Solem* test.[5]

### III. Conclusion

Upon review of the record and relevant law, we conclude that Section 1611(c) of the CDL Act does not violate the prohibition on cruel and unusual punishment as embodied in the Eighth Amendment to the United States Constitution. Accordingly, we affirm.

_____
CHRISTINE FIZZANO CANNON, Judge

---

[5] Although we do not reach the two additional *Solem* factors (comparison of Chappell's penalty with others in Pennsylvania and with similarly situated individuals in other jurisdictions), they would not compel a different result. Regarding the second factor, the mandatory nature of Section 1611(c) results in the same penalty in every case like Chappell's. *Dietrich*, 82 A.3d at 1092. Regarding the third factor, as noted above, federal regulations recommend lifetime CDL disqualification upon a second DUI, which is followed by all other states and the District of Columbia. Although 24 states currently do have regulations or statutes in place that allow an individual to plead mitigation and seek a reduction to a ten-year suspension, that is for the Department and the General Assembly to address should they choose to do so, not the courts. *See Chappell I*, slip op. at 10 n.13, 2023 WL 6862003, at *5 n.13.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Melvin Chappell,                :
           Appellant      :
                               :
           v.                :
                               :
Commonwealth of Pennsylvania,    :
Department of Transportation,      : No. 431 C.D. 2022
Bureau of Driver Licensing        :

# **O R D E R**

AND NOW, this 11th day of October, 2024, the April 8, 2022, order of the Court of Common Pleas of Philadelphia County is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge