J-S14005-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| LAMAR DOUGLAS CLARK | : | |
| | : | |
| Appellant | : | No. 1289 MDA 2016 |

Appeal from the Judgment of Sentence July 7, 2016
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s):  CP-36-CR-0005760-2014

BEFORE:   GANTMAN, P.J., SHOGAN, J., and STRASSBURGER, J.*

MEMORANDUM BY GANTMAN, P.J.:                **FILED APRIL 25, 2017**

Appellant, Lamar Douglas Clark, appeals from the judgment of sentence entered in the Lancaster County Court of Common Pleas, following his jury trial convictions of one count each of third-degree murder and firearms not to be carried without a license, two counts of aggravated assault, and eleven counts of recklessly endangering another person.[1]  We affirm.

In its opinion, the trial court full and correctly sets forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.

Appellant raises the following issues for our review:

_____

[1] 18 Pa.C.S.A. §§ 2502(c), 6106(a)(1), 2702(a)(1), and 2705, respectively.

_____

*Retired Senior Judge assigned to the Superior Court.

DID THE TRIAL COURT ERR IN FINDING THAT THERE WAS SUFFICIENT EVIDENCE AT TRIAL TO SUPPORT THE JURY VERDICT OF GUILTY TO COUNT 5, AGGRAVATED ASSAULT, WHEN THE COMMONWEALTH DID NOT ESTABLISH THAT [APPELLANT] HAD THE SPECIFIC INTENT TO ATTEMPT TO CAUSE SERIOUS BODILY INJURY TO CYNTHIA BOOTS AND CYNTHIA BOOTS DID NOT SUFFER SERIOUS BODILY INJURY[?]

DID THE TRIAL COURT COMMIT AN ABUSE OF DISCRETION IN OVERRULING [APPELLANT'S] REQUESTED PENNSYLVANIA SUGGESTED STANDARD JURY INSTRUCTION 9.501 THAT INCLUDED THE LANGUAGE "OR SUBJECT TO THE FELONIOUS ACT OF ROBBERY" WHEN THIS WAS PART OF [APPELLANT'S] THEORY OF THE CASE AND WAS SUPPORTED BY EVIDENCE PRESENTED[?]

DID THE TRIAL COURT COMMIT AN ABUSE OF DISCRETION IN REFUSING TO GRANT A MISTRIAL AND/OR CURATIVE INSTRUCTION DUE TO PROSECUTORIAL MISCONDUCT DURING CLOSING ARGUMENT IN THE FORM OF PERSONAL OPINION, BOLSTERING THE CREDIBILITY OF COMMONWEALTH WITNESSES, MAKING ARGUMENT OF EVIDENCE NOT IN THE RECORD, AND SHIFTING THE BURDEN OF PROOF TO [APPELLANT?]

(Appellant's Brief at 7).

A challenge to the sufficiency of the evidence implicates the following legal principles:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless

the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super. 2005) (quoting *Commonwealth v. Bullick*, 830 A.2d 998, 1000 (Pa.Super. 2003)).

"[O]ur standard of review when considering the denial of jury instructions is one of deference—an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." *Commonwealth v. Baker*, 24 A.3d 1006, 1022 (Pa.Super. 2011), *aff'd*, 621 Pa. 401, 78 A.3d 1044 (2013) (quoting *Commonwealth v. Galvin*, 603 Pa. 625, 651, 985 A.2d 783, 798-99 (2009), *cert. denied*, 559 U.S. 1051, 130 S.Ct. 2345, 176 L.Ed.2d 565 (2010)). "The trial court has broad discretion in formulating jury instructions, as long as the law is presented to the jury in a clear, adequate, and accurate manner." *Commonwealth v. Lukowich*, 875 A.2d 1169, 1174 (Pa.Super. 2005), *appeal denied*, 584 Pa. 706, 885 A.2d 41 (2005).

[A] trial court is not obligated to instruct a jury upon legal principles which have no applicability to the presented facts. There must be some relationship between the law upon which an instruction is requested and the evidence

presented at trial. However, a defendant is entitled to an instruction on any recognized defense which has been requested, which has been made an issue in the case, and for which there exists evidence sufficient for a reasonable jury to find in his or her favor.

*Commonwealth v. Bohonyi*, 900 A.2d 877, 883 (Pa.Super. 2006), *appeal denied*, 591 Pa. 679, 917 A.2d 312 (2007) (citation omitted)

Similarly, "review of a trial court's denial of a motion for mistrial is limited to determining whether the trial court abused its discretion." *Commonwealth v. Brooker*, 103 A.3d 325, 332 (Pa.Super. 2014), *appeal denied*, 632 Pa. 679, 118 A.3d 1107 (2015). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will…discretion is abused." *Id.*

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable James P. Cullen, we conclude Appellant's issues on appeal merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (*See* Trial Court Opinion, filed October 3, 2016, at 4-16) (finding: **(1)** both Commonwealth witness, Veldresha Lucas, and defense witness, Joshua Welsh, testified that Appellant pointed gun at Joshwin Gonzalez prior to firing several shots; this testimony was sufficient to establish Appellant's intent to cause serious bodily injury to Mr. Gonzalez,

which transferred to Cynthia Boots when she was struck by bullet; even without consideration of doctrine of transferred intent, Appellant acted recklessly under circumstances manifesting extreme indifference to value of human life when he fired gun into crowded barroom; additionally, Ms. Boots suffered serious bodily injury because gunshot to her chest resulted in blood loss, possibility of infection, scarring, and ongoing pain; under these circumstances, jury properly convicted Appellant of aggravated assault of Ms. Boots; **(2)** Appellant asked court to include, in jury instruction on justification, reference to Appellant's reasonable belief he was subject to felonious act of robbery; nevertheless, defense reference to Dennis Ishman and Mr. Gonzalez "setting up" Appellant was too vague and speculative to warrant inclusion of requested robbery language; thus, court properly declined to include reference to robbery in jury instruction on justification; **(3)** with respect to prosecutor's reference to Commonwealth's duty to provide all evidence to defense and statement that defense worked backwards from Commonwealth's evidence, these comments did not constitute improper testimony by prosecutor or inappropriately shift burden of proof to defense; prosecutor stated multiple times during closing argument that Commonwealth had burden of proof at trial; additionally, prosecutor's remarks were responsive to comments made by defense counsel about the omission of certain evidence at trial; statement in question was merely part of longer argument on credibility of defense

witnesses and did not constitute prosecutorial misconduct; with respect to prosecutor's comments on Commonwealth's duty to disclose deals made with witnesses, prosecutor's remarks simply demonstrated that Commonwealth would have disclosed any promise made to Ms. Lucas in exchange for her testimony; comment was also directly responsive to defense counsel's comments about Ms. Lucas' pending charges and possible benefits she might gain as Commonwealth witness; further, aspects of prosecutor's statement were mere oratorical flourish and did not improperly bolster Ms. Lucas' credibility; under these circumstances, prosecutor's reference to lack of deal with Ms. Lucas' did not constitute prosecutorial misconduct; with respect to prosecutor's comments about defense counsel's ability to call witnesses and present evidence, Appellant waived any challenge to this statement for failure to raise issue in his objection to closing arguments at trial; finally, with respect to prosecutor's comments on testimony of defense witness, Mr. Welsh, prosecutor's statements were basic oratorical flair used during closing arguments; further, prosecutor's remarks were similar in style to comments made by defense counsel about credibility of Commonwealth witnesses; comments were within latitude given to prosecutor in closing arguments and were manifestation of prosecutor's right to respond to points raised by defense counsel; moreover, court instructed jury to disregard any opinions voiced on credibility of witnesses; under these circumstances, prosecutor's comments on testimony of Mr. Welsh did not

constitute prosecutorial misconduct; therefore, court properly denied Appellant's request for mistrial). Accordingly, we affirm on the basis of the trial court opinion.

Judgment of sentence affirmed.

Judge Shogan joins this memorandum.

Judge Strassburger files a concurring memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/25/2017

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
C R I M I N A L

COMMONWEALTH OF PENNSYLVANIA  :

V.  :  No. 5760 - 2014
1289 MDA 2016

LAMAR DOUGLAS CLARK  :

## OPINION SUR APPEAL

On May 3, 2016, after a six day jury trial, Defendant, Lamar Douglas Clark, was found guilty of one count of third degree murder[1], two counts of aggravated assault,[2] eleven counts of recklessly endangering another person[3] and one count of firearms not to be carried without a license.[4] On July 7, 2016, Defendant was sentenced to an aggregate term of not less than 38 and one-half nor more than 81 years incarceration. Defendant filed his notice of appeal on August 3, 2016, and his statement of errors complained of on appeal on August 26, 2016.

## Factual Background

Viewed in the light most favorable to the Commonwealth as verdict winner, *Commonwealth v. James*, 46 A.3d 776, 779 (Pa. Super. 2012), the evidence introduced at trial establishes the following facts.

---

[1] 18 Pa. C.S. § 2502(c).

[2] 18 Pa. C.S. § 2702(a)(1).

[3] 18 Pa. C.S. § 2705.

[4] 18 Pa. C.S. § 6106(a)(1).

Some time before 10:00 p.m. on November 7, 2014, Defendant entered Shenk's Cafe, a neighborhood tavern in Lancaster, Pennsylvania, with Daniel Ishman, known as "Zip." (N.T. Apr. 28, 2016, pp. 66-67; N.T. Apr. 29, 2016, pp. 41-43). The bar area of Shenk's Cafe is a narrow space, approximately 14 feet wide. (N.T. Apr. 27, 2016, p. 73). At the time Defendant entered, the crowd in the barroom was estimated at between 20 and 50 people. (N.T. Apr. 28, 2016, p. 192).

Defendant and Ishman left the bar and returned approximately twenty minutes later with Joshwin Gonzalez, known as "J" or "Joey." (N.T. Apr. 27, 2016, pp. 114-115, 122; N.T. Apr. 28, 2016, pp. 68-69, 71). At around 10:00 p.m., Defendant called Ishman over and said that "he felt like someone was after him." (N.T. Apr. 29, 2016, pp. 48-49). Then, as Gonzalez approached, Defendant told him to stop and asked why he was coming over. Gonzalez replied that he thought Defendant had called him. Defendant then pointed a pistol at him and fired five shots. (N.T. Apr. 28, 2016, pp. 77-78). Three people were struck by gunfire. Joshwin Gonzalez suffered a gunshot wound to the left arm. (N.T. Apr. 27, 2016, pp.119-120). Cynthia Boots, a customer who had been seated near the jukebox, suffered a wound to the left breast. (N.T. Apr. 27, 2016, pp.197-198, 201-202). Barry Diffenderfer, a customer also seated near the jukebox, suffered a fatal wound to the chest. He was found unresponsive on the floor by the first responding police officer. (N.T. Apr. 27, 2016, pp. 6, 9, 195-198; N.T. Apr. 28, 2016, p. 131).

Shortly after the shooting, police observed Defendant running naked on Chestnut Street, approximately two blocks from Shenk's Cafe. (N.T. Apr. 27, 2016, pp. 25, 31-33). As Defendant was being detained, a juvenile called to police and gave a pistol to Lancaster

City Detective Stanley Roache explaining that Defendant had given the weapon to him. (N.T. Apr. 27, 2016, p. 36). That weapon, a five-shot revolver, contained five spent .38 caliber cartridges. (*Id.* at pp. 37-38, 42; N.T. Apr. 28, 2016, p. 30). Four .38 caliber bullets were recovered from Shenk's Cafe; one had DNA from Joshwin Gonzalez and a second had DNA from Cynthia Boots. (N.T. Apr. 27, 2016, p. 43; N.T. Apr. 28, 2016, pp. 89-90; N.T. Apr. 29, 2016, pp. 30-31). A fifth bullet was recovered from the body of Barry Diffenderfer. (N.T. Apr. 26, 2016, p. 28). The pistol that the juvenile gave to police was traced back to the late father of Defendant's current girlfriend at the address where Defendant lived with his girlfriend. (N.T. Apr. 28, 2016, pp. 186-187).

Police were able to identify and interview approximately twelve people who had been in Shenk's Cafe that night. (N.T. Apr. 29, 2016, pp. 192-193). One witness, Veldresha Lucas, Defendant's sister, testified to seeing the interaction between Defendant, Ishman and Gonzalez that preceded the shooting as well as the shooting itself. (N.T. Apr. 28, 2016, pp. 76-78). Others testified to hearing shots and hiding in fear. (See, e.g., N.T. Apr. 27, 2016, pp. 154-155, 159).

Defendant also presented evidence which was largely discredited by the jury. With respect to the issues raised on appeal, Martha Cuelo testified that she overheard Ishman saying that "they had set up Lamar Clark and he was going to never come out . . . ." (N.T. Apr. 29, 2016, p. 159).

On cross examination, Detective Roache testified that the juvenile who handed him the pistol told him that Defendant had said "they tried to kill me." (N.T. Apr. 27, 2016, pp. 52-53). Police Officer Ben Bradley, who was present when Defendant was detained and

3

transported him to the police station, also testified on both direct and cross examination that Defendant had said "they tried to set me up in Shenk's." (N.T. Apr. 27, 2016, pp. 12, 25-26).

## Discussion

Defendant raises six issues in his statement of errors complained of on appeal. These fall into three categories: first, whether there was sufficient evidence to convict Defendant of aggravated assault of Cynthia Boots since the Commonwealth did not establish Defendant's specific intent to cause serious bodily injury to Ms. Boots or even that she suffered serious bodily injury, (Defendant's statement of errors, ¶ 1); second, whether the Court abused its discretion in overruling Defendant's request for a jury instruction on justification that included language indicating that the Commonwealth had to prove beyond reasonable doubt that Defendant did not reasonably believe he was "subject to the felonious act of robbery," (id., ¶ 2); and third, whether various statements by the assistant district attorney in his closing argument constituted prosecutorial misconduct, (id. ¶¶ 3-6).

## I. Aggravated Assault

The first issue is whether there was sufficient evidence to convict Defendant of the aggravated assault of Cynthia Boots. "The test of sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing the proper inferences favorable to the Commonwealth, the trier of fact could reasonably have

found that all the elements of the crime had been established beyond a reasonable doubt." *Commonwealth v. Rose*, 463 Pa. 264, 267-68, 344 A.2d 824, 825 (1975).

A person commits aggravated assault if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa. C.S. § 2702(a)(1). "A person acts intentionally with respect to a material aspect of an offense when . . . it is his conscious object to engage in conduct of that nature or to cause such a result." 18 Pa. C.S. § 302(b)(1)(i). Intent may be proven by direct or circumstantial evidence. *Commonwealth v. Matthew*, 589 Pa. 487, 492, 909 A.2d 1254, 1257 (2006). And, where firearms are involved, the Pennsylvania Supreme Court has stated that "[a] gun is a lethal weapon; pointing it toward a person, and then discharging it, speaks volumes as to one's intention." *Commonwealth v. Hall*, 574 Pa. 233, 242-243, 830 A.2d 537, 543 (2003).

That someone other than the intended victim is injured does not change the result. Under the doctrine of transferred intent, when intentionally or knowingly causing a particular result is an element of an offense, that element will be established when the actual result is not within the intent or contemplation of the actor but the actual result differs from what was contemplated only in the respect that a different person is injured. See 18 Pa. C.S. § 303(b)(1). In charging the jury on the homicide count, the Court explained the doctrine of transferred intent in the following terms

> The Commonwealth is relying on the legal concept that's referred to as transferred intent. The Commonwealth has alleged that while the defendant intended to kill Joshwin Gonzalez, he actually caused the death of Barry Diffenderfer. If you find beyond a reasonable doubt that the defendant intended to kill Mr. Gonzalez and was acting with that intent at the time he,

5

in fact, killed Barry Diffenderfer you may find that the defendant acted with the specific intent to kill under what the law calls the Doctrine of Transferred Intent. What this means is, that if the actual result of the defendant's intent differs from what he contemplated, only because a different person than the one actually intended to be killed was killed, the element of . . . specific intent . . . Is still established.

(N.T. May 2, 2016, pp.119-120).[5]

The transferred intent doctrine has been applied in cases of aggravated assault. In *Commonwealth v. Thompson*, 559 Pa. 229, 739 A.2d 1023 (1999), the Supreme Court affirmed a defendant's conviction for first degree murder and aggravated assault where the defendant had intentionally shot toward one person and missed while hitting and killing another person. The Supreme Court rejected the defendant's argument that the trial court's transferred intent instruction was unwarranted because the person who was not shot was not an intended victim, noting that such a claim ignored the essence of the transferred intent doctrine "that is, that the person who ultimately is the victim not be the intended victim." *Id.* at 241, 739 A.2d at 1029. The Supreme Court went on to note that "[t]he transferred intent theory provides that if the intent to commit a crime exists, this intent can be transferred for the purpose of finding the intent element of another crime." *Id.*, 739 A.2d at 1029-1030.

Relying on *Thompson*, the Pennsylvania Superior Court applied the doctrine to affirm the conviction in *Commonwealth v. Jackson*, 955 A.2d 441 (Pa. Super. 2008), an aggravated assault case in which the defendant shot toward several people while intending to shoot another individual. In that case, the Superior Court indicated that there was no

---

[5]Defendant took no exception to the charge on this point or that it was not repeated with respect to the attempted murder or aggravated assault charges. (See N.T. May 2, 2016, pp. 137-138, 142).

6

evidence beyond the defendant firing a deadly weapon toward them to indicate he had a specific intent to inflict injury on these particular persons. *Id.* at 448. The Superior Court noted, however, that the defendant admitted intending to shoot one person and contended that the others were simply in the way when he opened fire, *id.* at 445, and found that his specific intent to cause serious bodily injury to his intended target was transferred to those others. *Id.* at 450.

Further, as demonstrated by *Thompson* and *Jackson*, under the transferred intent doctrine, where the defendant intentionally attempts to injure one person, an unintended victim need not even suffer an injury. As the Supreme Court noted, "to sustain a conviction for aggravated assault, the Commonwealth only needed to establish that [the defendant] attempted to cause serious bodily injury. There is no requirement that the victim actually be injured." *Thompson*, 559 Pa. at 241, 739 A.2d at 1029 (citation omitted). The jury could reasonably have found, based on Defendant's attempt to cause serious bodily injury to Joshwin Gonzalez, that it was not necessary for Ms. Boots to have suffered serious bodily injury.

Testimony at trial from Defendant's sister, Veldresha Lucas, indicated that he pointed a pistol at Joshwin Gonzalez and fired five shots. (N.T. Apr. 28, 2016, p. 7). A defense witness, Joshua Welsh, also testified that Defendant aimed his pistol at Joshwin Gonzalez before opening fire. (N.T. Apr. 29, 2016, pp. 136, 138-39). The jury could reasonably have found from this that Defendant intended to shoot Joshwin Gonzalez and that Defendant's intent to shoot Joshwin Gonzalez could transfer to the other shooting

7

victim, Cynthia Boots. See *Thompson*, 559 Pa. at 241, 739 A.2d at 1029; *Jackson*, 955 A.2d at 450.

Nor is it necessary for the Commonwealth to prove that Defendant intended to shoot Joshwin Gonzalez when he shot Ms. Boots. As previously noted, a person is guilty of aggravated assault if he causes serious bodily injury "recklessly under circumstances manifesting extreme indifference to the value of human life. 18 Pa. C.S. § 2702(a)(1). In a case in which the defendant fired six shots in a crowded bar, one of which struck a bystander causing serious injury, the Supreme Court observed that the jury "could properly find . . . that the firing of a number of shots in a barroom full of people constituted reckless conduct manifesting extreme indifference to the value of human life." *Commonwealth v. Daniels*, 467 Pa. 35, 38, 354 A.2d 538, 539 (1976).

Even without consideration of the issue of transferred intent, the evidence in this case showed that Defendant fired into a crowded barroom, as in *Daniels*, which the jury could reasonably have found to constitute recklessness manifesting extreme indifference to the value of human life.

In challenging Defendant's aggravated assault conviction, Defendant also claims the Commonwealth failed to prove that Cynthia Boots suffered serious bodily injury. Serious bodily injury is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any body member or organ." 18 Pa. C.S. § 2301. Ms. Boots suffered a gunshot wound to the chest, resulting in loss of blood and the possibility of infection. She also testified that she has scars on her breast and pain from her wound. (N.T. Apr. 27,

8

2016, p. 206). The jury could reasonably have found that there was a substantial risk of death or that the scarring to an intimate part of her body constituted serious, permanent disfigurement.

## II. Jury Charge

Defendant next claims that the Court abused its discretion by overruling Defendant's request to charge the jury on his need to protect himself from the crime of robbery as a basis for a defense of justification. (Def.'s statement of errors, ¶ 2). The relevant inquiry for an appellate court reviewing a jury instruction is "whether such charge is warranted by the evidence in the case." *Commonwealth v. Baker*, 963 A.2d 495, 506 (Pa. Super. 2008) (citations omitted). Defendants are generally entitled to the jury instructions they request that are supported by the evidence. *Commonwealth v. Hairston*, 624 Pa. 143, 163, 84 A.3d 657, 668 (2014). A particular instruction is only warranted when there is evidence to support such an instruction. *Commonwealth v. Browdie*, 543 Pa. 337, 671 A.2d 668, 673 (1996).

In the present case, the Court charged the jury as follows:

If the Commonwealth proves to you beyond a reasonable doubt that the defendant used deadly force, then to prove that such force was not justifiable in this case, it must prove one of the following elements beyond a reasonable doubt: The first is that the defendant did not reasonably believe that he was *immediately in danger of death or serious bodily injury from Joshwin Gonzalez* at the time he used the force and that, therefore, his belief that it was necessary for him to use deadly force to protect himself was unreasonable.

(N.T. May 2, 2016, p. 115) (emphasis added).

9

Defendant wanted the charge to indicate that the Commonwealth would have to prove that Defendant "did not reasonably believe that he was immediately in danger of death or serious bodily injury *or subject to the felonious act of robbery.*" (Emphasis added). Defendant predicated this request on testimony that Dennis Ishman and Joshwin Gonzalez had "set up the Defendant." (Def.'s statement of errors, ¶ 2; see also N.T. Apr. 27, 2016, p. 12; Apr. 29, 2016, p. 159).

Careful review of the trial transcript indicates that nowhere in the evidence is there any testimony by any witness about robbing or attempting to rob Defendant. Any reference to "setting up" Defendant is too vague and speculative to warrant inclusion of the robbery language in the jury charge on justification.

### III. Prosecutorial Misconduct

Defendant also claims that the assistant district attorney engaged in prosecutorial misconduct by making several remarks during his closing argument that warranted a mistrial.

"It is well settled that a prosecutor has considerable latitude during closing arguments and his arguments are fair if they are supported by the evidence or use inferences that can reasonably be derived from the evidence." *Commonwealth v. Holley*, 945 A.2d 241, 250 (Pa. Super. 2008). Comments by the prosecutor "must be examined within the context of defense counsel's conduct," and it is also well settled that the prosecutor "may fairly respond to points made in the defense closing." *Commonwealth v. Judy*, 978 A.2d 1015, 1020 (Pa. Super. 2009) (quoting *Commonwealth v. Chmiel*, 585 Pa. 547, 618-19, 889 A.2d 501, 543-44 (2005) (citations omitted)). Not every intemperate or

10

uncalled for remark by the prosecutor requires a new trial. *Commonwealth v. Cox*, 603 Pa. 223, 257, 983 A.2d 666, 687 (2009) (citations omitted).

Prosecutors may also comment on the credibility of witnesses but may not express personal opinions as to their credibility. *Commonwealth v. Sanchez*, 623 Pa. 253, 316, 82 A.3d 943, 981 (2013) (allowing prosecutor's comments on credibility of witnesses where defense counsel, in his own closing, had addressed credibility and veracity of Commonwealth's witnesses at length and where the court determined that credibility was a fundamental aspect of the case). Further, there will be no prosecutorial misconduct where comments were only oratorical flair. *Id.*

Ultimately, prosecutorial misconduct will be evaluated under a harmless error standard, *Holley*, 945 A.2d at 250, and appellate review of a prosecutor's remarks and allegations of prosecutorial misconduct require the appellate court to evaluate whether the defendant received a fair trial, not a perfect trial, *Judy*, 978 A.2d at 1020 (citation omitted).

In the present case, Defendant has alleged prosecutorial misconduct requiring a mistrial based on four specific points within the prosecutor's closing argument.

First, Defendant asserts that the prosecutor engaged in misconduct when he "gave personal opinion, testified, testified to evidence not in the record, and improperly shifted the burden of proof" when he indicated two accordion file folders containing the file of the case and said

> This is everything. Now I'm a prosecutor and . . . I have some obligations in the law when the case starts. This is what my obligations are, I have to send everything to the defense. Everything. I submit to you that their witnesses knew what had to be said and they are working backwards.

(Def.'s statement of errors, ¶ 3; N.T. May 2, 2016, pp. 61, 95).

11

Taken on its face, this statement says nothing that constitutes testimony or shifting the burden of proof. As the prosecutor stated in responding to Defendant's argument on this language at trial, "I simply referenced the fact that I have to give defendants everything. I acknowledged I had the burden multiple times in my closing." (N.T. May 2, 2016, p. 95). Further, taken in context, as it must be, this statement is responsive to comments made by defense counsel relating to omissions of evidence. This statement is part of a longer argument on the credibility of Defendant's witnesses. As noted, the prosecutor may comment on witness credibility so long as he does not offer a personal opinion on the issue. See *Sanchez*.

Defendant further contends that the prosecutor engaged in misconduct when he "testified, bolstered the credibility of Commonwealth witness(es), and gave personal opinion on the evidence" by saying

> Valdresha Lucas, defense counsel referenced the deals, promises. If you have heard about any promises—if there were any promises . . . . You would have heard about them, because of this process, discovery, because of disclosure, because I am an officer of the Court, first and foremost. I have an obligation to disclose everything. [And] there were no promises made. Any insinuation that there were promises made that you haven't heard about is basically an insinuation that I am corrupt. And I assure you, after 21 years of practicing law, I am not corrupt. No promises have been made to anybody in any way, shape or form.

(Def.'s statement of errors, ¶ 4; N.T. May 2, 2016, pp. 70-71).

Taken in context, this statement ties in with the previous statement of which Defendant complained. It notes the prosecutor's duty to disclose information to the defense and indicates that, had any promises been made, they would have been disclosed. It is also directly responsive to comments contained in defense counsel's

12

closing in which he referred to pending charges against Ms. Lucas and alluded to possible benefits she might derive from testifying as she did. (See N.T. May 2, 2016, pp. 35, 37-39). For the prosecutor to have said he is not corrupt is a mere rhetorical flourish; the jury was free to make its own decision on that point. To say that he made no promises to any witness does not bolster the testimony of any witness beyond indicating there was no quid pro quo. It also goes to the testimony of Defendant's witness, Joshua Welsh, who came forward with information regarding the case only while incarcerated and possibly looking for help with his own problems, (see N.T. Apr. 29, 2016, pp. 154-155; N.T. May 2, 2016, pp. 84-85), and whose testimony was prominently mentioned in defense counsel's own closing, (see N.T. May 2, 2016, pp. 9, 11, 16, 18, 19, 45-47).

Defendant next claims that the prosecutor engaged in misconduct when he "testified and shifted the burden of proof" by saying

> If there is something truly exculpatory out there, something I just don't want you to hear about, even though I'm an officer of the Court, something in this big file that I had to give to defense counsel months ago, . . . , he could have called that witness; I have the burden, he has the ability to call witnesses. If there is someone I'm hiding, something in that phone that really helps Lamar Clark out, he could have called the witness. Why wouldn't he do that?

(Def.'s statement of errors, ¶ 5; N.T. May 2, 2016, pp. 72-73).

Defendant did not raise this issue in his objections at trial, (see N.T. May 2, 2016, pp. 94-97); accordingly, it has been waived. See Pa. R.A.P. 302(a) (stating "[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal"); *Commonwealth v. Arrington*, 624 Pa. 506, 544, 86 A.3d 831, 854 (2014) (stating that the defendant's claim was waived where counsel did not raise contemporaneous objection to prosecutor's summation or the trial court's instruction on that point).

13

Finally, Defendant maintains that the prosecutor engaged in misconduct when he "gave personal opinion and personal opinion on the credibility of a witness" in his comments about the testimony of Defendant's witness, Joshua Welsh. While defense counsel has condensed the prosecutor's remarks about Welsh to a single page, the prosecutor actually went on at much greater length.

In particular, the prosecutor said "Joshua Welsh is just terrible with inconvenient facts," noting that he was the only one to see or hear certain things during the events in Shenk's Cafe. The prosecutor then observed that "Joshua Welsh is an exceptional human being, he is just missing the cape and the big S on his chest. Really. Really, think about what he did. Think about, first of all, he has amazing powers–this is assuming he is there, I'm not going to assume he was there, but assuming he was . . . ." The prosecutor further went on to cite the seemingly superhuman "bionic" hearing, "x-ray" vision, and "Medal of Honor" bravery of Welsh as it related to his testimony about what took place in Shenk's Cafe, again noting, despite his location in the room and what others testified to, he was the only one to see or hear certain things and was the only one to stay in the open during the shooting. At the same time, the prosecutor noted that Welsh only came forward months later, while incarcerated in state prison, and "admitted he wanted something."

"Their case," said the prosecutor, "rests on Joshua Welsh." But, he cautioned, "[i]f Joshua Welsh told you the sky is blue and the sun comes up in the east you should check for yourself. You can't believe anything that person says. Nothing." He then pointed out Welsh's history of crimes of *crimen falsi*, noting Welsh had pled guilty only four months before to twice attempting to rob a bank.

14

> Their case rides on the back of Josh Welsh, a man who saw things no person could have seen; who acted in a way that no sane person would act; who heard things no human being would have heard; who didn't talk to the police and a man who was twice convicted of bank robbery. I feel sorry for him.

(Def.'s statement of errors, ¶ 5; N.T. May 2, 2016, pp. 79-86).

The Court overruled Defendant's objection to this statement, and to all the others Defendant had objected to, noting that this "is basically oratorical flair." Further, as the Court noted, Defendant had been "hardly bashful" in commenting on the credibility of the Commonwealth's witnesses and the prosecutor "is free to respond in kind." (N.T. May 2, 2016, pp. 97-98). This is consistent with the latitude given to the prosecutor in closing, see *Holley*, and his right to respond to points raised by defense counsel, see *Judy*. And, as in *Sanchez*, the credibility of witnesses was central to this case. While the prosecutor may have strayed close to offering an improper personal opinion on the testimony of Welsh, his comments must be viewed in context, *Judy*, 978 A.2d at 1020, and not every intemperate remark requires a mistrial, *Cox*, 603 Pa. at 257, 983 A.2d at 687.

Notwithstanding having overruled Defendant's objections, the Court offered a cautionary instruction at the start of the charge to the jury, advising jurors that:

> It doesn't matter what my opinion may be about this case; nor does it matter what the opinions of the attorneys may be, or the opinions of the attorneys to any of the witness[es] or the testimony. That is your business and your business alone. You are the sole and exclusive judges of the facts and how you weigh all of the evidence and testimony is entirely up to you . . . .

(N.T. May 2, 2016, p. 99).

15

The Court also instructed jurors on assessing witness credibility, conflicting testimony and the effect of a witness's criminal convictions. (N.T. May 2, 2016, pp.102-111).

While certain of the prosecutor's comments may have been better left unsaid, none of these individually, or all together, in the context of the evidence presented at trial and the closing argument of defense counsel was such as to warrant a mistrial or deprive Defendant of a fair trial. Moreover, the Court gave the jury a specific cautionary instruction with respect to any opinions expressed by counsel.

This opinion constitutes the trial court opinion required by Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure.

BY THE COURT:

_____
JAMES P. CULLEN, JUDGE

Date: ___October 3, 2016___

Attest:

Copies to:
Mark D. Fetterman, Esquire
Randall L. Miller, Esquire

I certify this document to be filed in the Lancaster County Office of the Clerk of the Courts.

_____
Jacquelyn E. Pfursich
Clerk of Courts

16