IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Adam H. Cromley,      :
      Appellant  :
           :
    v.       :
           :
Commonwealth of Pennsylvania,  :
Department of Transportation,   : No. 456 C.D. 2023
Bureau of Driver Licensing    : Submitted: December 9, 2024

BEFORE:  HONORABLE RENÉE COHN JUBELIRER, President Judge
      HONORABLE CHRISTINE FIZZANO CANNON, Judge (P.)
      HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON      FILED: March 17, 2025

    Adam H. Cromley (Cromley) appeals from the April 12, 2023, opinion and October 10, 2023, order of the Court of Common Pleas of Northumberland County (trial court).[1]  The trial court's order denied Cromley's appeal of the lifetime disqualification of his commercial driver's license (CDL) based on the Uniform Commercial Driver's License Act (CDL Act), 75 Pa.C.S. §§ 1601-1622.  Upon review, we vacate and remand to the trial court to issue a new opinion.

---

[1] The trial court issued an April 12, 2023, opinion stating its disposition, which was docketed on April 13, 2013.  However, the trial court did not issue a corresponding order at that time.  Cromley timely appealed from the trial court's opinion to this Court, which remanded in September 2023 for the trial court to formally issue an order, which it did on October 10, 2023. Reproduced Record (R.R.) at 104a.  Accordingly, this opinion will use the trial court's October 2023 order as the formal mechanism for this appeal.

## I. Factual & Procedural Background

On June 13, 2022, the Department of Transportation's Bureau of Driver Licensing (DOT) issued a notice advising Cromley that based on his refusal of chemical testing for suspicion of driving under the influence (DUI) on May 26, 2022, which was his second DUI-oriented offense, his CDL would be disqualified for life pursuant to Section 1611(c) of the CDL Act, 75 Pa.C.S. § 1611(c), which states that a combination of two or more enumerated offenses, including a DUI violation and/or a refusal of chemical testing for DUI, will result in lifetime CDL disqualification. Reproduced Record (R.R.) at 32a. In a timely appeal, Cromley asserted *inter alia*[2] that lifetime CDL disqualification constituted cruel and unusual punishment pursuant to the Eighth Amendment to the United States Constitution and the corresponding provision of the Pennsylvania Constitution.[3]

The trial court held a hearing on February 28, 2023. R.R. at 1a-30a. Counsel for Cromley stipulated that in February 2006, Cromley committed a DUI offense that resulted in a one-year suspension of his CDL and that on May 26, 2022, he was stopped for a traffic violation and refused chemical testing for DUI. *Id*. at 8a-9a & 20a. Because Cromley stipulated to the May 2022 offense, the officer who conducted the stop did not testify to the particulars of the incident. *Id*. at 12a. However, the officer's affidavit of probable cause in the original record, which was

---

[2] Cromley raised additional challenges that were either resolved at the trial court level or are not at issue in this appeal.

[3] The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. Amend. VIII. Article I, section 13 of the Pennsylvania Constitution provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel punishments inflicted." PA. CONST. Art. I, § 13. These provisions are treated as coextensive. *Shoul v. Dep't of Transp., Bureau of Driver Licensing*, 173 A.3d 669, 682 n.13 (Pa. 2017).

admitted at the hearing, states that he observed Cromley fail to stop at an intersection with a flashing red light and fail to use his turn signal.

In support of his Eighth Amendment claim, Cromley testified that he was 37 years old and worked previously as a maintenance mechanic earning about $30,000 per year. R.R. at 12a-14a. Once he got his CDL, his earnings increased to about $40,000 per year. *Id*. About three years ago, his brother, who had worked for their father, was killed in an airplane accident. *Id*. at 15a. Cromley started working for his father and earned about $120,000 his first year. *Id*. Since then, he earns about $80,000-$100,000 per year. *Id*. at 15a-16a.

Cromley testified that he is married with no children; he and his wife's monthly expenses (car payment, mortgage, utilities, gas, home heating oil, and car and home insurance) are about $3,000 per month. R.R. at 17a-18a. His wife is a teacher and earns about $45,000-$50,000 per year. *Id*. at 18a. He also helps his late brother's son with some bills. *Id*. at 17a. He testified that if he loses his CDL, he would not be able to work for his father and would have to find some other kind of work, probably back as a mechanic earning about what he earned before getting his CDL. R.R. at 16a & 19a. It would be more physically difficult for him at his age and he and his wife would struggle to pay their bills. *Id*. at 19a. At the end of the hearing, the trial court ordered briefing from both sides. *Id*. at 26a.

Cromley averred in his brief to the trial court that he had "presented more than sufficient information" and evidence to support his position that pursuant to the relevant law, lifetime disqualification of his CDL constituted cruel and unusual punishment. R.R. at 57a. He asserted that the May 2022 stop was for a minor traffic offense and not because he had been a specific harm to other drivers. *Id*. at 57a-58a. He referenced his hearing testimony that losing his CDL would have

3

a serious impact on his personal and professional life. *Id*. at 58a. He noted that even though he had a prior DUI from 2006, it was so long ago that his May 2022 refusal to submit to chemical testing for DUI was criminally charged as a first offense for which his punishment would be relatively minimal; his personal driver's license might be suspended but would not be revoked for life. *Id*. In both offenses, he had been driving a personal vehicle, and no one was hurt. *Id*. He asserted that these factors rendered lifetime CDL disqualification grossly disproportionate punishment to his offenses. *Id*. at 59a.

The DOT acknowledged in its brief to the trial court that lifetime CDL disqualification was penal in nature, as this Court held in *Sondergaard v. Department of Transportation, Bureau of Driver Licensing*, 65 A.3d 994 (Pa. Cmwlth. 2013). R.R. at 65a. The DOT applied the analytical framework set forth in *Shoul v. Department of Transportation, Bureau of Driver Licensing*, 173 A.3d 669 (Pa. 2017), which incorporated elements from *Solem v. Helm*, 463 U.S. 277 (1983), and *Commonwealth v. 1997 Chevrolet and Contents Seized from Young*, 160 A.3d 153 (Pa. 2017), to determine whether a particular punishment is grossly disproportionate to the offense. *Id*. at 66a-70a.

The DOT asserted that under *Solem*, Section 1611(c) of the CDL Act did not violate the Eighth Amendment because the harshness of the penalty (lifetime CDL disqualification) corresponded with the gravity of the offense (multiple DUI-oriented offenses by a CDL holder). *Id*. at 70a-80a. The DOT referred to the CDL Act's purpose of ensuring public health, safety, and welfare by disqualifying CDL holders who commit serious traffic violations and offenses, including DUIs. *Id*. at 71a (quoting Section 1602 of the CDL Act, 75 Pa.C.S. § 1602). The DOT also relied on federal laws and regulations that condition states' receipt of federal highway

4

funds with the responsibility to regulate CDL holders and disqualify them for commission of drug or alcohol offenses while driving a vehicle, whether commercial or otherwise. *Id*. at 71a-79a.

The DOT next analyzed Cromley's case under the case-specific factors from *1997 Chevrolet* and asserted that Cromley's two DUI-oriented offenses represented a pattern of offending conduct and potential (if not yet actual) harm to society if Cromley was permitted to keep his CDL. *Id*. at 80a-81a. The DOT added that Cromley received the same penalty as other CDL holders with multiple similar offenses and that all 50 states and the District of Columbia impose lifetime CDL disqualifications after a second DUI-oriented offense. *Id*. at 81a-82a.

On April 12, 2023, the trial court issued an opinion stating that pursuant to *Shoul*, Cromley would have to overcome the strong presumption of the constitutionality of Section 1611(c) of the CDL Act and show that lifetime CDL disqualification would be grossly disproportionate to his offenses. R.R. at 87a-88a. The trial court adopted the DOT's analysis and concluded that Cromley failed to do so:

> [W]e are persuaded that [the] analysis of the [DOT] is the correct one. While there is no question that a lifetime CDL disqualification will have a significant impact upon [Cromley], it is the same sanction that is imposed upon those similarly situated in this Commonwealth and across the nation. [Cromley] has not rebutted "the strong presumption of constitutionality."

*Id*. at 88a.

Cromley timely appealed to this Court from the trial court's opinion and after our remand to the trial court to issue a formal order in accordance with its opinion, this matter is now ripe for review.[4]

## II. Issue and Parties' Arguments

The sole issue on appeal is whether Section 1611(c) of the CDL Act, as applied in this case, amounts to cruel and unusual punishment.[5] Cromley largely reiterates his arguments to the trial court. Cromley's Br. at 23-25. He admits to seven total driving offenses but avers that his DUI-oriented offenses were 16 years apart, which does not indicate a regularity of conduct. *Id*. at 25-26. He states that neither of his DUI-oriented offenses caused any actual harm or injury. *Id*. at 26.

The DOT reiterates its arguments that pursuant to *Shoul*, lifetime CDL disqualification here does not amount to cruel and unusual punishment. DOT's Br. at 11-28. The DOT notes that the trial court adopted its analysis in its entirety. *Id*. at 14. The DOT adds that it is currently working on a proposed amendment to the CDL Act to permit mitigation of lifetime CDL disqualification after 10 years based on certain conditions; a proposed bill was referred to the Pennsylvania Senate's Committee on Transportation in June 2023. *Id*. at 27.

---

[4] Cromley preserved his Eighth Amendment claim in his statement of issues pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). R.R. at 99a-100a. In its opinion pursuant to Rule 1925(a), the trial court relied upon its April 12, 2023, opinion. *Id*. at 103a.

[5] Our review of a trial court's decision in a license suspension case is limited to determining whether the court's findings of fact are supported by substantial evidence, and whether the court committed an error of law or an abuse of discretion in reaching its decision. *Orloff v. Dep't of Transp., Bureau of Driver Licensing*, 912 A.2d 918, 922 n.7 (Pa. Cmwlth. 2006).

6

## III. Discussion

Section 1611 of the CDL Act provides in pertinent part:

**(a) First violation of certain offenses.**--Upon receipt of a report of conviction, the [DOT] shall, in addition to any other penalties imposed under this title, disqualify any person from driving a commercial motor vehicle or school vehicle for a period of one year for the first violation of:

(1) section 3802 (relating to driving under influence of alcohol or controlled substance) or former section 3731, where the person was a commercial driver at the time the violation occurred;

. . . .

**(c) Two violations of certain offenses.**--Except as set forth in subsection (c.1), the [DOT] shall disqualify for life any person convicted of two or more violations of any of the offenses specified in subsection (a), or the subject of two or more reports of test refusal as specified in section 1613, or any combination of those offenses and/or refusals, arising from two or more separate and distinct incidents. Only offenses committed after the effective date of this chapter may be considered in applying this subsection.

75 Pa.C.S. § 1611(a)(1), (c). Section 1613(d.1) of the CDL Act, as referenced in Section 1611(c), states that if a CDL holder refuses chemical testing for DUI, the holder will be subject to the same disqualification period "as if the [DOT] had received a report of the person's conviction for violating one of the offenses listed in section 1611(a)[.]" 75 Pa.C.S. § 1613(d.1).

A presumption exists that the General Assembly does not intend to violate the United States Constitution when promulgating legislation. *See* 1 Pa.C.S. § 1922(3). "Duly enacted legislation is presumed valid, and unless it clearly, palpably and plainly violates the Constitution, it will not be declared

unconstitutional. Accordingly, the party challenging the constitutionality of a statute bears a heavy burden of persuasion." *Commonwealth v. Baker*, 78 A.3d 1044, 1050 (Pa. 2013) (citation omitted).

> There is no dispute that Section 1611(c) is penal in nature:
>
> In general, operating a motor vehicle is a privilege, not a right. Yet, Section 1611(c) does not have any effect upon this privilege; CDL holders disqualified for life under Section 1611(c) do not lose the privilege to operate a motor vehicle; instead, these CDL holders lose the right to practice their chosen profession. The severity of this sanction transforms what is a remedial law in the context of a one-year disqualification, into a penal law.

*Sondergaard*, 65 A.3d at 997 (holding in a non-constitutional case that Section 1611(c) applies to CDL holders whether their DUI offenses occur while they are driving commercial or personal vehicles).

We recently addressed the Eighth Amendment implications of lifetime CDL disqualification in *Chappell v. Department of Transportation, Bureau of Driver Licensing*, 326 A.3d 160 (Pa. Cmwlth. 2024) (*Chappell II*), in which we applied the following framework to determine whether a punishment is grossly disproportionate to the offense in violation of the Eighth Amendment:

> [W]e must initially focus on the first *Solem* factor, the gravity of the offense and the harshness of the penalty, to determine whether [the CDL holder] has identified an inference of gross proportionality between the offense of two DUIs and the penalty of lifetime CDL disqualification. If he has, then we may consider the second and third elements of the *Solem* test.

*Id.* at 167-68 (citation omitted).[6] This test was adopted from *Shoul*, which applied it to Section 1611(e) of the CDL Act, 75 Pa.C.S. § 1611(e), which imposes a lifetime CDL disqualification on drivers convicted of using a motor vehicle to commit drug trafficking offenses.

Regarding the first *Solem* factor, in *Shoul*, our Supreme Court adopted additional factors to serve as a guide for courts considering Eighth Amendment matters:

> [In *1997 Chevrolet*], this Court recently expounded further on the appropriate considerations attendant a determination of whether a sanction constituting Eighth Amendment "punishment"—there, civil forfeiture of instrumentalities of crime—is grossly disproportionate to the related crime. Specifically, noting that the United States Supreme Court has largely left it to lower courts to further develop the intricacies of the gross disproportionality inquiry, we catalogued myriad factors relevant to determining the harshness of a particular penalty—including, *inter alia*, the objective and subjective value of the property forfeited to the owner and third parties, such as whether forfeiture would deprive the property owner of his livelihood—as well as factors salient in determining the gravity of an offense—including, *inter alia*, the nature of the offense, the offender's sentence as compared to the maximum available sentence for the offense, the regularity of the defendant's criminal conduct, and any actual harm arising from the offense other than a "generalized harm to society."

*Shoul*, 173 A.3d at 686.

In this passage from *Shoul*, our Supreme Court recognized that *1997 Chevrolet* pertained to civil *in rem* forfeiture. However, the Court did not explore

---

[6] "[A] reviewing court is not obligated to reach the second and third prongs of the test unless a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." *Baker*, 78 A.3d at 1047.

the differences between the two contexts. First, *1997 Chevrolet* was analyzed under the Eighth Amendment's Excessive Fines Clause, which is distinct from the Eighth Amendment's prohibition on cruel and unusual punishment. Both entail review for gross disproportionality, but the excessive fines analysis focuses more closely on the value of the property at issue; in *1997 Chevrolet*, our Supreme Court included factors specific to a value analysis:

> The factors, among others, to be considered in assessing the value of the property are:
>
> (1) the fair market value of the property;
>
> (2) the subjective value of the property taking into account whether the property is a family residence or if the property is essential to the owner's livelihood;
>
> (3) the harm forfeiture would bring to the owner or innocent third parties; and
>
> (4) whether the forfeiture would deprive the property owner of his or her livelihood.

160 A.3d at 192. By contrast, in cases evaluating whether a penalty constitutes cruel and unusual punishment, the focus is more squarely on the gravity of the offense and the harshness of the penalty, which need not be financial in nature or even property oriented. *See Chappell II*, 326 A.3d at 166-67 (discussing *Solem*, where the penalty at issue was life imprisonment without parole for a seventh non-violent felony).

In this context, we note a further distinction. The penalties at issue are both mandatory. In the current version of the civil forfeiture statute, which for these purposes is equivalent to the version in *1997 Chevrolet*, the property at issue "shall be subject to forfeiture to the Commonwealth." 42 Pa.C.S. § 5802. In Section 1611, the DOT "shall disqualify for life any [CDL holder] convicted of two or more

10

violations" of any of the provision's enumerated offenses. 75 Pa.C.S. § 1611(c). However, civil forfeiture may arise from varied circumstances and involve multiple types of property that may be involved in drug trafficking. The statute provides the Commonwealth broad authority to seize drugs, drug-making equipment, cash and financial instruments, aircraft, boats, vehicles, and real estate. 42 Pa.C.S. § 5802. Given that variety, a specific analysis of value is warranted within the gross disproportionality analysis for an excessive fines challenge. The *1997 Chevrolet* factors afford trial courts a degree of discretion when conducting that type of analysis.

By contrast, lifetime CDL disqualification for commission of multiple DUI offenses is a singular penalty. Although the value of a CDL will be personal to each offender, the circumstances will nearly always be the same: loss of their CDL will negatively impact their ability to earn money driving commercial vehicles. The ability to earn a livelihood is a valid consideration, as our Supreme Court recognized in both *1997 Chevrolet* and *Shoul*. However, "the right to practice one's chosen profession is subject to the lawful exercise of the Commonwealth's power to protect the health, safety, welfare, and morals of the public by regulating the profession." *Germantown Cab Co. v. Phila. Parking Auth.*, 206 A.3d 1030, 1044 (Pa. 2019). The CDL Act embodies this principle through its expressed purpose of promoting "the public health, safety, and welfare" by "[d]isqualifying commercial drivers who have committed certain serious traffic violations or other specified offenses." 75 Pa.C.S. § 1602. Accordingly, a challenge to Section 1611 based on cruel and unusual punishment provides the trial court with less discretion in conducting its gross disproportionality analysis.

11

Also, as recognized in *1997 Chevrolet*, civil forfeiture may impact a property owner who has little or no culpability for the underlying offense but may lose property having significant value, whether viewed objectively or subjectively. 160 A.3d at 192. By contrast, lifetime CDL disqualification can only be imposed on the actual offender, who cannot argue that the penalty amounts to cruel and unusual punishment because he or she is not guilty of the underlying offenses. *See id.* at 188 (citing *United States v. 45 Claremont St.*, 395 F.3d 1, 6 (1st Cir. 2004), where property owner's "direct involvement in drug transactions" outweighed the harshness of forfeiting the residence where he lived with four young children).

With these differences, the *1997 Chevrolet* factors do not fit precisely into the question of whether the harshness of lifetime CDL disqualification is grossly disproportionate to the commission of multiple DUI offenses. However, our Supreme Court in *Shoul* adopted the *1997 Chevrolet* factors to serve as a guide, recognizing that there may be "myriad factors relevant to determining the harshness of a particular penalty." 173 A.3d at 686. The Court also stated that "the question of whether a particular punishment is appropriate to a particular crime belongs in the first instance to the legislature" and, accordingly, "[r]eviewing courts . . . should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." 173 A.3d at 686 (quoting *United States v. Bajakajian*, 524 U.S. 321, 336 (1998) (quotation marks and brackets omitted)). The key is to consider the nexus between the conduct at issue, specifically multiple DUI offenses, and the basis for the consequences of that conduct, specifically the sanction of lifetime CDL disqualification in order to ensure public health, safety, and welfare. Within the above-noted limitations of the

Section 1611 inquiry as opposed to civil forfeiture, if the nexus is significant, then the penalty is not cruel and unusual punishment.

In *Shoul*, our Supreme Court concluded that the record was insufficient to determine whether lifetime CDL disqualification was grossly disproportionate to Shoul's offenses because it contained "little detail concerning the facts of Shoul's offense, the impact of the loss of his CDL, his sentence as compared to the maximum sentence he faced, or the actual harmful consequences resulting from his offense." 173 A.3d at 687. The trial court had also lacked guidance as to the appropriate legal test to apply. *Id.* The matter was remanded to the trial court for development of the record and application of the appropriate test, including the case-specific *1997 Chevrolet* factors, in order to "develop a comprehensive exposition of the harshness" of Section 1611 and the gravity of Shoul's offense, and to "weigh one against the other." *Id.*

In *Chappell II*, the legal framework was settled, and the record was sufficiently developed. We first considered the impact of federal highway safety laws and regulations, which authorize and recommend lifetime CDL disqualification for a second DUI offense. 326 A.3d at 168-69. We determined that lifetime CDL disqualification for a second DUI offense "reflects the General Assembly's longstanding comprehension of the unquestionable dangers of drunk driving by CDL holders, which in turn reflects that the offense carries a high degree of gravity in this analytical context." *Id.* at 169. We also concluded:

> Although lifetime CDL disqualification is a severe penalty, Chappell is not in prison, nor is he unable to work or even drive a personal vehicle for work purposes. The right to practice one's chosen profession is not absolute; it is "subject to the lawful exercise of the Commonwealth's power to protect the health, safety, welfare, and morals of the public by regulating the profession." Accordingly, the

13

penalty here, while serious, is not so harsh as to outweigh the gravity of the offense at issue.

*Id.* Accordingly, we concluded that the *Solem* analysis did not reflect gross disproportionality between the penalty and the offense. *Id.* at 169-70.

Next in *Chappell II*, we considered the relevant factors from *1997 Chevrolet* as applied to the specifics of Chappell's case:

> [W]e first consider the regularity of Chappell's criminal conduct. Although Chappell has had no DUIs since the 2018 offense that triggered his lifetime CDL disqualification, this is technically his third DUI conviction (1993, 2007, and 2018). However, as we discuss in footnote 1 above, his first DUI in 1993 did not count as a "conviction" for purposes of CDL suspension or disqualification as it would since the 2005 amendments to the CDL Act. For purposes of this analysis, then, we do not consider it. We next consider the actual harm, rather than general societal harm, caused by his DUIs. Fortunately, Chappell's DUIs did not result in any actual harm to others.

*Id.* at 170. We ultimately concluded as follows:

> [A] second DUI committed by a CDL holder is a grave offense, given public safety concerns that are patently reasonable . . . . The penalty here is harsh, but commensurate with the gravity of the offense. Accordingly, . . . we conclude that Section 1611(c) of the CDL Act, which imposes lifetime CDL disqualification for a second DUI conviction, does not create an inference of gross disproportionality such that the statute violates the Eighth Amendment. Thus, we need not reach the second and third prongs of the *Solem* test.

*Id.* at 170-71. Put another way, the nexus between Chappell's conduct in committing two DUI offenses and the consequence of lifetime CDL disqualification was such that the penalty was not grossly disproportionate to the offense.

14

Here, the legal framework was available to the trial court. Cromley's counsel introduced a copy of *Shoul* at the hearing and the case was admitted as an exhibit. R.R. at 9a & 24a. Cromley's counsel added that Cromley's testimony would be presented in accordance with the requirements of *Shoul*. *Id*. at 10a. Both sides addressed *Shoul* and *1997 Chevrolet* in their post-hearing briefs to the trial court. *Id*. at 53a-58a & 66a-83a. Regarding the *1997 Chevrolet* factors, neither side specifically focused on the value of Cromley's CDL, either objectively or subjectively, but Cromley did testify at the hearing about his income before he obtained his CDL, his substantially higher income with the CDL, and the financial and professional difficulties that he would sustain if he was to lose it. *Id*. at 12a-19a. Cromley's counsel stipulated to the nature of the offenses (the 2006 DUI and the 2022 refusal of chemical testing) and there was no dispute that Cromley's offense resulted in no actual harm or injury, so testimony was not heard on those issues. The original record includes Cromley's driving history, which would aid the trial court in determining whether his record reflects a regularity of criminal conduct.

Given the foregoing, this case is unlike *Shoul*, where the trial court record was clearly insufficient and the applicable law had not yet been fully developed. *See* 173 A.3d at 687. This case is also unlike the initial iteration of *Chappell*, where this Court remanded for a new opinion because the trial court deemed Chappell's Eighth Amendment claim waived even though Chappell had raised the claim and presented evidence in support of it. *See Chappell v. Dep't of Transp., Bureau of Driver Licensing* (Pa. Cmwlth., No. 431 C.D. 2022, filed Oct. 18, 2023), slip op. at 11-12, 2023 WL 6862003, at **5-6 (unreported). On remand, the trial court in *Chappell sua sponte* held an additional evidentiary hearing that this Court's remand order had not authorized. *Chappell II*, 326 A.3d at 164. When the

case returned to this Court, we concluded that the second hearing exceeded the scope of our remand order and limited our substantive analysis to the evidence taken at the initial hearing. *Id*. at 167.

Here, the trial court had *Shoul* and a record that, according to Cromley's counsel, included "more than sufficient information" and evidence to support his Eighth Amendment claim. R.R. at 10a & 57a. Nevertheless, the trial court did not apply the *Shoul* framework to the record. Instead, the trial court adopted the DOT's analysis to reject Cromley's Eighth Amendment claim. *See* R.R. at 88a (stating that "we are persuaded that [the] analysis of the [DOT] is the correct one"). This may have been expedient, but it failed to fulfill our Supreme Court's directive in *Shoul* that the trial court must address the harshness of lifetime CDL disqualification and the severity of the CDL holder's offense, and "weigh one against the other." 173 A.3d at 687.

The trial court's opinion here does not reflect its independent thought and reasoning and leaves this Court without a meaningful analysis upon which appropriate appellate review may be conducted to determine whether the nexus between Cromley's conduct and the consequence of lifetime CDL disqualification results in gross disproportionality such that the penalty amounts to cruel and unusual punishment.[7] This matter will be remanded for the trial court to apply the framework set forth in *Shoul*, which we recently applied in *Chappell II*. This will include

---

[7] As discussed in this opinion, the analysis requires consideration of whether the punishment is grossly disproportional to the gravity of the offense. In *1997 Chevrolet*, our Supreme Court listed the factors to be used to assess the value of the property involved (here, the CDL) and the gravity of the offense. *See* 160 A.3d at 191-92.

16

treatment of the relevant *1997 Chevrolet* factors as imported into the *Shoul* framework by our Supreme Court. *See* 173 A.3d at 686.[8]

## IV. Conclusion

Based on the foregoing discussion, the trial court's order is vacated. This matter is remanded to the trial court to issue a new opinion.


_____
CHRISTINE FIZZANO CANNON, Judge

---

[8] As noted, the DOT asserts that it is assisting in drafting language to amend Section 1611 to include conditions for a trial court to consider mitigation of a lifetime CDL disqualification to a period of 10 years in accordance with Section 1611(d), which authorizes the DOT to issue regulations to that effect. DOT's Br. at 27.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Adam H. Cromley,                          :
                        Appellant         :
                                          :
            v.                            :
                                          :
Commonwealth of Pennsylvania,             :
Department of Transportation,             :   No. 456 C.D. 2023
Bureau of Driver Licensing                :

# **O R D E R**

AND NOW, this 17th day of March, 2025, the October 10, 2023, order of the Court of Common Pleas of Northumberland County is VACATED. This matter is REMANDED to the trial court to issue a new opinion.

Jurisdiction relinquished.

_____
CHRISTINE FIZZANO CANNON, Judge